UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MILFORD CHRISTIAN CHURCH; <br> JAMES LOOMER; JANET PARADY; <br> JESSICA CAVARRETTA; <br><br> Plaintiffs, <br><br> v. <br><br> CHARLENE M. RUSSELL-TUCKER, <br> in her official capacity only, BETH BYE, <br> in her official capacity only; MANISHA <br> JUTHANI, in her official capacity only <br><br> Defendants. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | DKT No.: 3:23-cv-00304 <br><br><br><br><br><br><br><br><br><br><br><br> March 6, 2023 |

## **VERIFIED COMPLAINT**

1. This is an action for declaratory and injunctive relief by simple people of faith whose sole desire is for their government to let them practice their religious beliefs in peace and to continue to serve their community's spiritual needs as they have done for more than 30 years. It asks the Court's intervention to prevent the Defendants from closing down a church's educational ministries because it will not bend the knee to the state of Connecticut's vaccination mandates and general hostility toward people who hold the religious belief that taking vaccinations would be morally wrong.

## **PARTIES**

2. Plaintiff Milford Christian Church is a nonprofit religious organization organized and incorporated under the laws of the State of Connecticut. It is headquartered in Milford, Connecticut, and it operates ministries that serve the spiritual needs of its community. It brings this action on behalf of itself, its members, supporters

1

who possess all the indicia of membership, and similarly situated members of the public. It has approximately 50 members, and Plaintiff Jessica Cavarretta is a member.

3. Plaintiff James Loomer has served as the senior pastor of Milford Christian Church for over 32 years, the principal of Berean Christian Academy for approximately 25 years, and the supervisor and spiritual leader for Little Eagles' Daycare and Preschool. He sues both as the legal representative for Milford Christian Church and in his individual capacity.

4. Plaintiff Janet Parady operates and manages Little Eagles' Daycare and Preschool for Milford Christian Church. She sues as both a legal representative for Little Eagles' Daycare and Preschool and in her individual capacity.

5. Plaintiff Jessica Cavarretta is a Connecticut citizen who lives in Orange, Connecticut. She sues on her own behalf and on behalf of her minor son – a three-year-old who attends Little Eagles' Daycare and Preschool.

6. Defendant Charlene M. Russell-Tucker is the Commissioner for the Connecticut State Department of Education. She is sued in her official capacity only. Along with the Connecticut Office of Early Childhood and the Connecticut Department of Public Health, Defendant Russell-Tucker shares responsibility and authority for enforcing Conn. Gen. Stat. § 10-204a.

7. Defendant Beth Bye is the Commissioner for the Connecticut Office of Early Childhood (OEC). She is sued in her official capacity only. Along with the Connecticut Department of Education and the Connecticut Department of Public Health, Defendant Bye shares responsibility and authority for enforcing Conn. Gen. Stat. § 10-204a.

8. Defendant Manisha Juthani is the Commissioner of the Connecticut Department of Public Health. She is sued in her official capacity only. Along with the Connecticut Department of Education and the OEC, Defendant Juthani shares responsibility and authority for enforcing Conn. Gen. Stat. § 10-204a.

## JURISDICTION

9. The Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1343, 2201, and § 1651 as well as 42 U.S.C. § 1983. Venue is appropriate under 28 U.S.C. § 1391 because all of the parties are domiciled in Connecticut and all of the factual events giving rise to the cause of action occurred in Connecticut.

## FACTUAL ALLEGATIONS

### *Context*

10. Article Eighth, § 1 of the Connecticut Constitution guarantees free public education to all Connecticut citizens.

11. During the waning hours of April 27, 2021, the Connecticut General Assembly passed a bill labelled HB-6423 – "An Act Concerning Immunizations" – and immediately sent the act to Governor Ned Lamont to sign into law. Governor Lamont signed the act into law on April 28, 2021. It took effect immediately.

12. The act, now codified at Conn. Gen. Stat. § 10-204a, amended the previous version of Conn. Gen. Stat. § 10-204a to eliminate the religious exemption to Connecticut's school vaccination requirement.

13. In other words, the amended Conn. Gen. Stat. § 10-204a requires parents of children enrolled in preschool programs or any other prekindergarten program – public or private – to vaccinate their children on or before September 1, 2022 or not later than

fourteen days after transferring to another program and to submit proof of that vaccination to their school even if vaccinating their children is contrary to their religious beliefs. Conn. Gen. Stat. § 10-204a(a).

14. The law, however, contains what is colloquially known as a "grandfathering" provision. It does not require parents of children enrolled in kindergarten through grade 12 prior to April 28, 2021 to vaccinate their children if vaccinating their children is contrary to their religious beliefs. Conn. Gen. Stat. § 10-204a(b).

15. The law further provides for secular exemptions from the vaccination requirement in the form of medical exemptions upon the provision of a medical professional's note. Conn. Gen. Stat. § 10-204a(a).

***Products Derived From Aborted Fetuses With Potential For Devastating Health Consequences***

16. A vaccine consists of a virus (or a component of a virus), a liquid buffer, contaminants from the cell line used to manufacture it, commercial stabilizer, and other additives.

17. It is physically impossible to remove all cell line contaminants from a vaccine dosage.

18. Pharmaceutical companies also use cell lines artificially developed from aborted fetuses to research, develop, test, and product their vaccines.

19. As of February 2020, the United States Center for Disease Control and Prevention (CDC) lists ten manufactured vaccines that contain or were developed and tested using cell lines artificially developed from aborted human fetal cells (designated by the acronyms MRC-5 and WI-38). **Exhibit A – Vaccine Excipient Summary**.

20. The presence of very small amounts of human fetal cells and DNA in the human blood can create a very strong autoimmune reaction in a person by which his body turns against itself and starts killing its own cells and tissues.

### *Plaintiff Milford Christian Church*

21. Milford Christian Church is an Assemblies of God Christian church that has served the spiritual needs of its members in Milford, Connecticut and the surrounding area for over 35 years.

22. It currently has approximately 50 members.

23. Milford Christian Church has several ministries in addition to traditional church services. Those ministries include holding prayer vigils and witnessing outside of abortion clinics in Connecticut, a kids church, a pre-kindergarten daycare and preschool known as Little Eagles, and the Milford Christian Academy – a school that provides grades K-12 education.

24. The foundational principle of Milford Christian Church and each of its ministries is to provide its members spiritual education and edification in a world that lost touch with God. In particular, its educational ministries employ "The Principal Approach" – a rigorously Biblical and practical view of life and education in which God is the center of attention and informs both education and worldview.

25. In other words, the education and care that Milford Christian Church provides and offers is far more than the three R's. Through a faith-based education and care program, Milford Christian Church meets its members and the children that it cares for in whatever spiritual state that they are in and helps them to grow mentally and spiritually into God-fearing, productive members of the community.

26. Milford Christian Church's ministry starts right from daycare and preschool activities. Through Little Eagles, it helps children learn about themselves and their world through a biblical lens, learn appropriate communication and social skills with respect for Christ's teachings, and develop a strong Christian character premised on self-confidence and self-discipline.

27. When a student is ready to enter formal education in the grades K-12, Milford Christian Church continues its ministry to both their education and souls through Milford Christian Academy.

28. Practically speaking, its approach has been extremely successful with 95 percent of the Milford Christian Academy's graduates being accepted to college.

29. For many parents, Milford Christian Church's educational ministries are both necessary and compelling for their children. It is no secret that many public and private schools would expose their children to graphic sex education with little to no regard to building their moral and spiritual character. Milford Christian Church's ministries, on the other hand, offer both a quality education and spiritual nurturing that students and parents would not obtain anywhere else.

30. Among the fundamental principles and teachings of Milford Christian Church are two that are particularly relevant to this case.

31. First, Milford Christian Church teaches the sanctity of all life, and it holds as a doctrinal tenet of faith that life begins at the moment of conception. Thus, it holds that the abortion of an unborn fetus is the intentional, premeditated murder of an innocent and pure life.

32. Second, Milford Christian Church relies on St. Paul's first epistle to the Corinthians, chapter 6, verses 19-20 to teach that Christians' bodies are the temples of the Holy Spirit and that they have a responsibility to keep their bodies pure and holy before God. In particular, this teaching prohibits Milford Christian Church members from consuming products that might cause them or their children physical harm.

33. When it comes to vaccines, Milford Christian Church relies on St. Paul's first letter to Timothy, chapter 5, verse 22 to teach that its members should not take part in other people's sin by consuming vaccines manufactured, tested, or otherwise developed using cell lines artificially developed from murdered unborn babies.

34. Additionally, Milford Christian Church teaches that its members should weigh within their own consciences whether vaccines would defile their bodies in the spiritual sense before God.

35. To that end and consistent with its teachings, Milford Christian Church has long declined to enforce a vaccination requirement on its students and their parents, and it has honored their religious objections to it.

36. The Defendants, however, have now delivered it an ultimatum.

37. On or about Wednesday, March 1, 2023, Inspector Bridget Merrill from the OEC conducted an annual inspection of Little Eagles – Milford Christian Church's daycare and preschool ministry.

38. Inspector Merrill cited Milford Christian Church for honoring certain students' religious objections to vaccines, including the flu vaccination, and ordered Milford Christian Church to submit a corrective action plan by March 15, 2023 to bring its students up to date on their vaccinations.

39. When pressed about the Church's options and doctrinal teachings and the parents' religious beliefs, Inspector Merrill delivered a three-headed ultimatum to Milford Christian Church: (1) Submit a corrective action plan outlining a catch-up schedule for the children's vaccinations; (2) expel the non-vaccinated children; or (3) the OEC would close Little Eagles.

40. This ultimatum presents Milford Christian Church and its members with an unconscionable choice that roughly translates as follows: (1) Abandon your deeply held religious beliefs to obey the state; (2) violate the biblical command given by Christ himself in the Gospel of Mark, chapter 12, verse 31 to love your neighbor as yourself; or (3) face the closure of an essential ministry that Milford Christian Church has conducted for many years.

41. Milford Christian Church will not abandon its fundamental professions of faith and require those who it is spiritually responsible for to endanger their souls at the behest of the Defendants. Nor will it turn away individuals who God has instructed them to minister to.

### Plaintiffs James Loomer & Janet Parady

42. James Loomer has served as the senior pastor of Milford Christian Church for over 32 years.

43. During that time, he has expanded Milford Christian Church's ministries to include educational ministries, including Little Eagles and Milford Christian Academy.

44. As the senior pastor of Milford Christian Church, Loomer has established the Church's doctrine and teachings that animate each of its ministries.

45. Thus, he has taught his flock the biblical doctrine pertaining to the sanctity of all life. He has established the Church's doctrinal tenet of faith that life begins at the moment of conception, and he has taught those that he and his Church minster to that the abortion of an unborn fetus is the intentional, premeditated murder of an innocent and pure life.

46. Pastor Loomer has taught those that his ministry has reached that, based on St. Paul's first epistle to the Corinthians, chapter 6, verses 19-20, Christians' bodies are the temples of the Holy Spirit and that they have a responsibility to keep their bodies pure and holy before God. In particular, Pastor Loomer has taught his flock not to consuming products that might cause them or their children physical harm.

47. When it comes to vaccines, Pastor Loomer, relying on St. Paul's first letter to Timothy, chapter 5, verse 22, taught his flock that they should not take part in other people's sin by consuming vaccines manufactured, tested, or otherwise developed using cell lines artificially developed from murdered unborn babies.

48. With respect to impurities contained in vaccines, Pastor Loomer, consistent with his teaching that his flock has an individual spiritual responsibility to God, has instructed them to weigh within their own consciences whether vaccines would defile their bodies in the spiritual sense before God.

49. As someone who has been brought into Milford Christian Church's ministry, Janet Parady professes, believes, and applies these teachings within the ministry that the Church has entrusted her with in the form of Little Eagles.

50. The Defendants' ultimatum seeks to compel both Pastor Loomer and Ms. Parady to expressly violate their consciences before God and to lead others to spiritual error on the pain of shutting down their ministries.

51. Neither Pastor Loomer nor Ms. Parady will comply, and neither can simply stop obeying God's call to minister to those who they have been called to minister to.

### *Plaintiff Jessica Cavarretta*

52. Plaintiff Jessica Cavarretta maintains her permanent residence in Orange, Connecticut.

53. Her three-year-old son attend Little Eagles pre-school and daycare.

54. Despite her other child who attends a Christian school in Connecticut being allowed to keep their religious exemption to the vaccination requirement, Cavarretta's three-year-old son will not be given the same exemption that his older sibling has been given. Instead, he is one of the children that the Defendants seek to either have vaccinated or expelled from Little Eagles.

55. Cavarretta holds the sincere religious belief that to use or benefit from the use of cell lines artificially developed from aborted fetus is morally and spiritually wrong.

56. Cavarretta also holds the sincere religious belief that injecting her son with a vaccine would pollute his body as the temple of the Holy Spirit.

57. Based on her sincere religious beliefs, she will not vaccinate her three-year-old son.

### **COUNT ONE – VIOLATION OF THE FIRST AMENDMENT RIGHT TO FREE EXERCISE OF RELIGION**

58. Paragraphs 1 through 57 are incorporated herein.

59. The First Amendment provides, in relevant part, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." The Free Exercise Clause "protects religious observers against unequal treatment and subjects to the strictest scrutiny laws that target the religious for special disabilities based on their religious statutes…. Applying that basic principle, this Court has repeatedly confirmed that denying a generally available benefit solely on account of religious identify imposes a penalty on the free exercise of religion that can be justified only by a state interest of the highest order." *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S.Ct. 2012, 2019 (2017) (internal citation and quotation marks omitted).

60. Connecticut's Constitution guarantees all Connecticut children a right to a free and adequate public education.

61. Conn. Gen. Stat. § 10-204a prohibits any child whose parents decline to vaccinate them on religious grounds from attending pre-school or kindergarten through grade 12 in both public and private schools, daycares, and pre-schools, except for the children who were already enrolled in kindergarten through grade 12 and already claimed a religious exemption prior to April 28, 2022.

62. Conn. Gen. Stat. § 10-204a, however, does allow parents to decline to vaccinate their children if a medical professional grants their children a medical exemption from vaccination.

63. Conn. Gen. Stat. § 10-204a denies a generally available benefit – education – to children if their parents do not abandon their religious beliefs while affording the same benefit to parents and children who assert a medical exemption.

64. Adding insult to injury, Conn. Gen. Stat. § 10-204a prevents parents from seeking alternative education options for their children by applying the same mandate to private schools, daycares, and pre-schools, including those operated by churches and religious organizations.

65. In other words, Conn. Gen. Stat. § 10-204a forces parents to either renounce their religious beliefs and vaccinate their children or homeschool their children – something that many parents cannot do – thus depriving them any educational opportunities.

66. Conn. Gen. Stat. § 10-204a's attempt to compel conduct that violates the Plaintiffs' religious beliefs on the pain of depriving children of a fundamental state constitutional right violates the First Amendment on its face.

67. Additionally, the Defendants' application of Conn. Gen. Stat. § 10-204a to the Plaintiffs is a blatantly unconstitutional attempt to prohibit them from operating ministries that do not conform to the Defendants' complete lack of regard for children's spiritual health. Thus, Conn. Gen. Stat. § 10-204a is unconstitutional as applied to the Plaintiffs.

**COUNT TWO – VIOLATION OF THE FIRST AMENDMENT RIGHT TO FREE SPEECH**

68. Paragraphs 1 through 67 are hereby incorporated herein by reference.

69. The First Amendment prohibits the Defendants from compelling speech or prohibiting its utterance.

70. The Defendants seek to compel the Plaintiffs – specifically Pastor Loomer and Ms. Parady – to convey an expressive message to parents and students within their ministry that violates their deeply held religious beliefs and convictions.

71. If the Plaintiffs do not comply with the Defendants' demand to utter speech that they disagree with, the Defendants will take actions – namely, the closing of Little Eagles and Milford Christian Church's other educational ministries – to prohibit the Plaintiffs from expressing their religious beliefs, thoughts, and convictions and from instructing children in those religious beliefs, thoughts, and convictions.

72. While the Defendants' actions occur under the color of Conn. Gen. Stat. § 10-204a, they impermissibly burden the Plaintiffs' right to free speech and seek to compel the Plaintiffs to utter speech that they do not agree with in violation of the First Amendment.

## COUNT THREE – VIOLATION OF THE FIRST AMENDMENT RIGHT TO FREEDOM OF ASSOCIATION

73. Paragraphs 1 through 72 are hereby incorporated herein by reference.

74. The First Amendment guarantees the Plaintiffs a right to freely associate and assemble with each other and other likeminded individuals for a variety of religious, political, educational and ideological activities.

75. The Defendants' actions in enforcing Conn. Gen. Stat. § 10-204a against them violate their right to freely associate and assemble with each other for the purpose of exercising their First Amendment right to educate themselves and their children through religious and educational activities.

## COUNT FOUR – VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT

76. Paragraphs 1 through 75 are hereby incorporated herein by reference.

77. Conn. Gen. Stat. § 10-204a prohibits any child whose parents decline to vaccinate them on religious grounds from attending daycare, pre-school, or kindergarten

through grade 12 in both public and private schools, daycares, and pre-schools, except for the children who are already enrolled in kindergarten through grade 12 and have already claimed a religious exemption.

78. Conn. Gen. Stat. § 10-204a, however, does allow parents to decline to vaccinate their children if a medical professional grants their children a medical exemption from vaccination.

79. Conn. Gen. Stat. § 10-204a denies a generally available benefit – education – to children if their parents do not abandon their religious beliefs while affording the same benefit to parents and children who assert a medical exemption.

80. Thus, Conn. Gen. Stat. § 10-204a singles out religious beliefs for less favorable treatment under the law and creates age-based classes on who may continue to exercise their religious beliefs while still availing themselves of an education.

### COUNT FIVE – VIOLATION OF THE FOURTEENTH AMENDMENT RIGHT TO CHILD REARING

81. Paragraphs 1 through 80 are hereby incorporated herein by reference.

82. "[T]he interest of parents in the care, custody, and control of their children is… perhaps the oldest of the fundamental liberty interests recognized by the [Supreme Court]." *Troxel v. Granville*, 530 U.S. 57 (2000).

83. Conn. Gen. Stat. § 10-204a's imposition of a vaccination requirement that prohibits the Plaintiffs from educating their children in any forum – public or private – completely interferes with their right to decide what is best for their children's health and to raise them according to their religious beliefs.

84. Thus, Conn. Gen. Stat. § 10-204a violates the Fourteenth Amendment on its face.

**PRAYER FOR RELIEF**

Wherefore, the Plaintiffs seek the following relief:

A. A declaratory judgment that Conn. Gen. Stat. § 10-204a and the Defendants' actions violate the First Amendment's Free Exercise Clause and are unconstitutional;

B. A declaratory judgment that Conn. Gen. Stat. § 10-204a and the Defendants' actions violate the First Amendment's Free Speech Clause and are unconstitutional;

C. A declaratory judgment that Conn. Gen. Stat. § 10-204a and the Defendants' actions violate the First Amendment's guarantee of freedom of association and are unconstitutional;

D. A declaratory judgment that Conn. Gen. Stat. § 10-204a violates the Fourteenth Amendment's Equal Protection Clause and is unconstitutional;

E. A declaratory judgment that Conn. Gen. Stat. § 10-204a violates the Fourteenth Amendment's Due Process Clause and is unconstitutional;

F. A permanent injunction enjoining the Defendants and their agents from enforcing Conn. Gen. Stat. § 10-204a against any individual who claims a religious objection to its vaccination mandate;

G. Costs and attorneys' fees;

H. Any such other and further relief that the Court deems just and reasonable.

The Plaintiff,

By: /s/ Cameron L. Atkinson /s/
Cameron L. Atkinson, Esq. (ct31219)
ATKINSON LAW, LLC
122 Litchfield Rd., Ste. 2
P.O. Box 340
Harwinton, CT 06791
Telephone: 203.677.0782
Email: catkinson@atkinsonlawfirm.com

16

## **VERIFICATION OF JAMES LOOMER**

I, James Loomer, being duly sworn and deposed, hereby state and affirm under oath as follows:

1. I am over 18 years of age, and I understand and believe in the obligations of an oath.

2. I have reviewed the complaint in this matter, discussed it with my counsel, and I know and believe that all of the factual allegations contained herein are true and accurate.

3. I have also reviewed the exhibits attached to this complaint, and, to the best of my knowledge, they are true and accurate copies of what they depict.

_____
James Loomer

Subscribed and sworn to before me, this __6th__ day of March, 2023

_Cameron L. Atkinson_
~~Notary Public/~~
Commissioner of the Superior Court

Juris No.: 442289

## VERIFICATION OF JANET PARADY

I, Janet Parady, being duly sworn and deposed, hereby state and affirm under oath as follows:

1. I am over 18 years of age, and I understand and believe in the obligations of an oath.

2. I have reviewed the complaint in this matter, discussed it with my counsel, and I know and believe that all of the factual allegations contained herein are true and accurate.

3. I have also reviewed the exhibits attached to this complaint, and, to the best of my knowledge, they are true and accurate copies of what they depict.

*Janet Parady*
Janet Parady

Subscribed and sworn to before me, this 6th day of March, 2023

*Cameron L. Atkinson*
~~Notary Public~~ /
Commissioner of the Superior Court

Juris No.: 442289

## VERIFICATION OF JESSICA CAVARRETTA

I, Jessica Cavarretta, being duly sworn and deposed, hereby state and affirm under oath as follows:

1. I am over 18 years of age, and I understand and believe in the obligations of an oath.

2. I have reviewed the complaint in this matter, discussed it with my counsel, and I know and believe that all of the factual allegations contained herein are true and accurate.

3. I have also reviewed the exhibits attached to this complaint, and, to the best of my knowledge, they are true and accurate copies of what they depict.

_____
Jessica Cavarretta

Subscribed and sworn to before me, this __6th__ day of March, 2023

Cameron L. Atkinson
~~Notary Public/~~
Commissioner of the Superior Court
Juris No.: 442289