**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| |
|---|
| Milford Christian Church, et al.,<br>    *Plaintiffs*,<br><br>      v.<br><br>Charlene M. Russell-Tucker, in her official<br>capacity only, et al.<br>    *Defendants.* |

No. 3:23-cv-304 (VAB)

**RULING AND ORDER ON MOTION TO DISMISS**

Milford Christian Church, James Loomer, Janet Pardy, and Jessica Cavaretta (collectively the "Plaintiffs") have sued Charlene M. Russell-Tucker, Beth Bye, and Manisha Juthani (collectively, the "Defendants"), alleging that these Defendants have violated their First Amendment rights to the free exercise of religion, free speech, and freedom of association, and their Fourteenth Amendment rights to equal protection of the laws and child rearing.

The Defendants have moved to dismiss this lawsuit in its entirety.

For the following reasons, the motion to dismiss is **GRANTED.**

To the extent the deficiencies identified in the factual allegations in Plaintiffs' Complaint can be remedied, Plaintiffs may move for leave to amend the Complaint by **January 19, 2024**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Allegations

Based in Milford, Connecticut, Milford Christian Church, a nonprofit religious organization, has approximately fifty (50) members. Complaint ¶ 2. Milford Christian Church allegedly "has several ministries in addition to traditional church services" including "holding

1

prayer vigils and witnessing outside of abortion clinics in Connecticut, a kids church, a pre-kindergarten daycare and preschool known as Little Eagles, and the Milford Christian Academy – a school that provides grades K-12 education." *Id.* ¶ 23.

James Loomer is the senior pastor of Milford Christian Church and the supervisor and spiritual leader for Little Eagles' Daycare and Preschool. *Id.* ¶ 3. Janet Parady operates and manages the Little Eagles' Daycare and Preschool for Milford Christian Church. *Id.* ¶ 4. Jessica Cavarretta is a Connecticut resident who lives in Orange, Connecticut, suing on behalf of herself and her three-year-old son who attends Little Eagles' Daycare and Preschool. *Id.* ¶ 5.

Charlene M. Russell-Tucker is the Commissioner for the Connecticut State Department of Education and is sued in her official capacity only. *Id.* ¶ 6. Beth Bye is the Commissioner for the Connecticut Office of Early Childhood and is sued in her official capacity only. *Id.* ¶ 7. Manisha Juthani is the Commissioner of the Connecticut Department of Public Health and is sued in her official capacity only. *Id.* ¶ 8.

In April 2021, the Connecticut General Assembly passed the bill HB-6423, "An Act Concerning Immunizations," which Governor Lamont signed into law on April 28, 2021. Complaint ¶ 11. It allegedly took effect immediately. *Id.* The Act, now Conn. Gen. Stat. § 10-204a, allegedly amended the previous version of the statute to eliminate religious exemptions for Connecticut's school vaccination requirements. *Id.* ¶ 12.

Connecticut General Statute § 10-204a now allegedly "requires parents of children enrolled in preschool programs or any other prekindergarten program – public or private – to vaccinate their children on or before September 1, 2022 or not later than fourteen days after transferring to another program and to submit proof of that vaccination to their school even if vaccinating their children is contrary to their religious beliefs." *Id.* ¶ 13 (citing Conn. Gen. Stat. §

2

10-204a(a)). The Act allegedly "does not require parents of children enrolled in kindergarten through grade 12 prior to April 28, 2021 to vaccinate their children if vaccinating their children is contrary to their religious beliefs." *Id.* ¶ 14 (citing Conn. Gen. Stat. § 10-204a(b)). The Act allegedly "provides for secular exemptions from the vaccination requirement in the form of medical exemption upon the provision of a medical professional's note. *Id.* ¶ 15 (citing Conn. Gen. Stat. § 10-204a(a)).

The vaccines allegedly contain a virus, a liquid buffer, and contaminants from the cell line, *id.* ¶ 16, and pharmaceutical companies allegedly "use cell lines artificially developed from aborted fetuses to research develop, test and product [*sic*] their vaccines." *Id.* ¶ 18. Plaintiffs allege, "When it comes to vaccines, Milford Christian Church relies on St. Paul's first letter to Timothy, chapter 5, verse 22 to teach that its members should not take part in other people's sin by consuming vaccines manufactured, tested, or otherwise developed using cell lines artificially developed from murdered unborn babies." *Id.* ¶ 33. Plaintiffs allege that vaccinations are contrary to their personal religious beliefs; for example, Cavarretta alleges that according to her "sincere religious belief [] injecting her son with a vaccine would pollute his body as the temple of the Holy Spirit." *Id.* ¶ 56.

Plaintiffs allege that the Act violates their First Amendment rights to the free exercise of religion (Count One), free speech (Count Two), freedom of association (Count Three); and their

Fourteenth Amendment rights to equal protection (Count Four) and child rearing (Count Five). *Id.* ¶ 15.

### B. Procedural History

On March 6, 2023, Plaintiffs filed their Complaint. ECF No. 1 ("Complaint").

On March 9, 2023, Plaintiff filed an emergency motion for temporary restraining order, ECF No. 12 ("TRO").

On March 13, 2023, this Court held a telephonic status conference, ECF No. 17, in which the parties agreed to file a proposed briefing schedule.

On May 5, 2023, Defendants filed a motion to dismiss. Motion to Dismiss, ECF No. 23 ("Def. Mot. to Dismiss").

On May 30, 2023, Plaintiffs filed their memorandum in opposition to the motion to dismiss. Pl. Mem in Opp. to Mot. to Dismiss, ECF No. 24 ("Pl. Opp.")

On June 13, 2023, Defendants filed their reply brief in further support of their motion to dismiss. Def. Reply Brief in Further Support of Mot. to Dismiss, ECF No. 25 ("Def. Reply").

On September 1, 2023, Plaintiffs filed their supplemental brief in opposition to the Defendants' motion to dismiss. Pl. Supp. Brief in Opp. to Def. Mot. to Dismiss, ECF No. 29. ("Pl. Supp. Opp."). This supplemental brief was filed to address the Second Circuit's recently

decided opinion in *We the Patriots USA, Inc. v. Connecticut Office of Early Childhood*, 76 F.4th 130 (2023).

On September 20, 2023, Defendants filed their Reply to Plaintiff's Supplemental Brief. Def. Reply to Pl. Supp. Brief, ECF No. 30 ("Def. Supp. Reply").

On October 23, 2023, the Court held oral argument on the pending motion to dismiss. ECF No. 33.

## II.   STANDARD OF REVIEW

### A.  Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under [Federal Rule of Civil Procedure] 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); FED. R. CIV. P. 12(b)(1). The plaintiff bears the burden of establishing by a preponderance of the evidence that the court has subject matter jurisdiction over the claims. *Id.*

"When considering a motion to dismiss pursuant to Rule 12(b)(1), the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000); *see also Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006) (quoting *Sweet*, 235 F.3d at 83). However, the court may also resolve disputed jurisdictional fact issues "by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing." *Karlen ex rel. J.K. v. Westport Bd. of Educ.*, 638 F. Supp. 2d 293, 298 (D. Conn. 2009) (citing *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000)).

### B.  Rule 12(b)(6)

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. FED. R. CIV. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "[t]wo working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted)). "[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663.

Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)). "[D]etermining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense. A court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. 663–64 (citations omitted).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views

the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of the City of New York.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.").

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

## III.    DISCUSSION

Defendants have moved to dismiss all five counts in Plaintiffs' Complaint under Rule 12(b)(1), 12(b)(5)[1], and 12(b)(6) because they argue that Plaintiffs lack standing, Plaintiffs have failed to state claims upon which relief can be granted, and Defendants Russell-Tucker and Juthani lack any legal authority for enforcing Conn. Gen. Stat. § 10-204a.

The Court will address these claims in turn, analyzing each separate claim, following a discussion of the threshold jurisdictional issue.

---

[1] At the hearing on the motion to dismiss, Defendants acknowledged that the 12(b)(5) insufficient service of process issue has been remedied, and therefore no action is required by the Court with respect to this argument. ECF No. 33.

**A.  The Jurisdictional Issue with Respect to Commissioners Russell-Tucker and Juthani**

"The Eleventh Amendment prohibits the 'Judicial power of the United States' from extending to 'any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.' U.S. Const. Amend. XI. This jurisdictional bar also immunizes a state entity that is an 'arm of the State.'" *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007) (citing *Northern Ins. Co. of N.Y. v. Chatham County, Ga.*, 547 U.S. 189 (2006)).

However, a "plaintiff may avoid the Eleventh Amendment bar to suit and proceed against individual state officers, as opposed to the state, in their official capacities, provided that his complaint (a) 'alleges an ongoing violation of federal law' and (b) 'seeks relief properly characterized as prospective.'" *Id.* at 618 (citing *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) and *In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 372 (2d Cir. 2005)). This exception was established in *Ex parte Young.* 209 U.S. 123 (1908). Under the *Ex parte Young* exception to Eleventh Amendment immunity, plaintiffs may sue state officials acting in their official capacity for "prospective injunctive relief" from violations of federal law. *See Edelman v. Jordan*, 415 U.S. 651, 663 (1974); *Henrietta D. v. Bloomberg*, 331 F.3d 261, 287–88 (2d Cir. 2003).

"Under *Ex parte Young*, the state officer against whom a suit is brought 'must have some connection with the enforcement of the act' that is in continued violation of federal law." *In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 372–73 (2d Cir. 2005) (citing *Ex parte Young* at 154). Courts in this District have held that the *Ex parte Young* exception does not apply to state officials "who lack authority to implement the requested prospective injunctive relief,"

*Beatty v. Tong*, No. 3:22-CV-380 (JAM), 2023 WL 2384111, at *8 (D. Conn. Mar. 6, 2023), or

who did not take action to seek or enforce the court orders that caused the alleged injuries,

*Szymonik v. Connecticut*, No. 3:18-CV-263 (MPS), 2019 WL 203117, at *6 (D. Conn. Jan. 15,

2019).

Defendants argue that Commissioners Russell-Tucker and Juthani are immune from suit

under Eleventh Amendment immunity because they are arms of the State. They argue that the *Ex*

*parte Young* exception does not apply because Plaintiffs fail to demonstrate that either

Commissioner Russell-Tucker or Commissioner Juthani has attempted or will attempt to enforce

Conn. Gen. Stat. § 10-204a. Def. Mot. to Dismiss at 5–6. They also argue that Plaintiffs have no

legal authority supporting their assertion that Commissioner Juthani has authority to enforce

Conn. Gen. Stat. § 10-204a. *Id.* at 7. Similarly, they argue that "Defendant Russell-Tucker (and

the [State Department of Education]) have no enforcement authority over the challenges

presented here given the preschool / private school status of the Plaintiff Milford Christian

Church." *Id.* at 8.

In response, Plaintiffs argue that Commissioner Juthani is part of the "triumvirate

implicating the definition of the law and its boots-on-the-ground enforcement in K-12 schools

and daycares and preschools." Pl. Opp. at 8. They argue that Juthani decides the vaccine

requirements in schools and daycares and her "possession and exercise of individualized

discretion with respect to the reviewing of medical exemptions and her sole control over what

vaccines are required to attend schools and daycares provides the controlling standard by which

other members of § 10-204a's triumvirate outlaw people of faith from society." *Id.* In response to

Defendants' argument that Russell-Tucker does not have enforcement authority, Plaintiffs state,

"While the Plaintiffs concede that Defendant Russell-Tucker has no connection to the

unconstitutional actions against Little Eagles, she would be the only prospective perpetrator of an unconstitutional outrage against Milford Christian Academy of the same ilk as the one committed against Little Eagles." *Id.* at 10.

The Court disagrees.

Plaintiffs have not alleged that Commissioner Juthani has enforcement authority over Conn. Gen. Stat. § 10-204a, that she has attempted to enforce it, or that she will enforce it. Def. Mot. to Dismiss at 6; Def. Reply at 5–7. Plaintiffs concede that they must "demonstrate some connection with the enforcement of a law that they claim violates federal law." Pl. Opp. at 8. While Plaintiffs argue that Commissioner Juthani has a connection to the enforcement of Conn. Gen. Stat. § 10-204a, nothing in their Complaint plausibly alleges actual authority to enforce the statute itself. *See, e.g., Beatty*, 2023 WL 2384111, at *8 ("Even if an official-capacity claim excuses a plaintiff from having to show that the named defendant was personally involved in the violation of the plaintiff's rights, the plaintiff must nonetheless show that the named defendant has the authority to carry out the relief that has been requested.") (citing *Jones v. Heap*, No. 3:21-cv-921 (JAM), 2022 WL 2078188, at *2 (D. Conn. June 9, 2022)). Nor do they allege that the Commissioner has attempted to enforce it against them or will attempt to enforce it against them in the foreseeable future.

As to Commissioner Russell-Tucker, similar to Commissioner Juthani, nothing in Plaintiffs' Complaint plausibly alleges that she has any enforcement authority or that she has or will taken any enforcement action against them.

In the absence of a plausible entitlement to relief, *see Iqbal*, 556 U.S. at 679 ("pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth"),

there is no basis for this Court to conclude that it has jurisdiction to decide claims regarding

these state officials.

Accordingly, the motion to dismiss as to Commissioners Juthani and Russell-Tucker will

be granted.

### B.  The Free Exercise Claim

Under the First Amendment, "Congress shall make no law respecting an establishment of

religion, or prohibiting the free exercise thereof . . . ." U.S. Const., Amend. 1. This latter clause,

commonly referred to as the Free Exercise Clause, applies to the States through incorporation by

the Fourteenth Amendment. *See Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940) ("The First

Amendment declares that Congress shall make no law respecting an establishment of religion or

prohibiting the free exercise thereof. The Fourteenth Amendment has rendered the legislatures of

the states as incompetent as Congress to enact such laws.").

In *Cantwell*, the Supreme Court recognized that the First Amendment "embraces two

concepts – the freedom to believe and freedom to act. The first is absolute but, in the nature of

things, the second cannot be. Conduct remains subject to regulation for the protection of

society." *Id.* at 304. "In *Employment Division, Department of Human Resources of Oregon v.

Smith*, 494 U.S 872, the Supreme Court reaffirmed that a law that incidentally burdens religious

exercise is constitutional when it (1) is neutral and generally applicable and (2) satisfies rational

basis review." *We the Patriots USA v. Connecticut*, 746 F.4th 130, 144 (2d Cir. 2023).

"A law is not neutral under *Smith* if the government 'proceeds in a manner intolerant of

religious beliefs or restricts practices because of their religious nature.'" *Id.* at 145 (quoting

*Fulton v. Philadelphia*, --- U.S. ---, 141 S.Ct. 1868, 1877 (2021)*; see also Church of Lukumi

Babalu Aye, Inc. v. City of Hialeah.*, 508 U.S. 520, 533 (1993) ("If the object of a law is to

infringe upon or restrict practices because of their religious motivation, the law is not neutral.").
In analyzing a law for religious neutrality a law may fail "if it explicitly singles out a religious
practice, or on account of improper legislative intent, that is, 'if it targets religious conduct for
distinctive treatment.'" *We the Patriots USA*, 746 F.4th at 145 (citations omitted). "[I]t is not
enough for a law to simply *affect* religious practice; the law or the process must demonstratre
hostility to religion." *Id.* (citations and internal quotation marks omitted) (emphasis in original).
"To determine whether the government has acted neutrally, courts look to factors such as the
background of the challenged decision, the sequence of events leading up to its enactment, and
the legislative or administrative history." *Id.* (citation omitted).

"The general applicability requirement prohibits the government from 'in a selective
manner impos[ing] burdens only on conduct motivated by religious belief.'" *Cent. Rabbinical
Cong. of U.S. & Canada v. New York City Dep't of Health & Mental Hygiene*, 763 F.3d 183, 196
(2d Cir. 2014) (citing *Church of Lukumi Babalu Aye, Inc.*, 508 U.S. at 543).

"Where a law is both neutral and generally applicable, rational basis review applies."
*M.A. on behalf of H.R. v. Rockland Cnty. Dep't of Health*, 53 F.4th 29, 36 (2d Cir. 2022) (citing
*Kane v. de Blasio*, 19 F.4th 152, 166 (2d Cir. 2021)); *see also Smith*, 494 U.S. at 879 ("decisions
have consistently held that the right of free exercise does not relieve an individual of the
obligation to comply with a 'valid and neutral law of general applicability on the ground that the

law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)'") (citing *United States v. Lee*, 455 U.S. 252, 263, n.3 (1982)). [2]

"If the law is not neutral or not generally applicable, it is subject to strict scrutiny, and the burden shifts to the government to establish that the law is narrowly tailored to advance a compelling interest." *We the Patriots*, 746 F.4th at 144.; *see also Cent. Rabbinical Cong. of U.S. & Canada*, 763 F.3d at 196 ("But where such purposeful and exclusive regulation exists—where the object of the law is itself the regulation of religious conduct—the law is subject to heightened scrutiny, and not to rational basis review.").

In applying these currently binding First Amendment principles to vaccination mandates, the Supreme Court and the Second Circuit have repeatedly rejected free exercise challenges to vaccination requirements on the basis of religious freedom. *See Phillips v. City of New York*, 775 F.3d 538, 543 (2d Cir. 2015) ("[F]ollowing the reasoning of *Jacobson* and *Prince*, that mandatory vaccination as a condition for admission to school does not violate the Free Exercise Clause."); *Prince v. Massachusetts*, 321 U.S. 158, 166–67 (1944) ("The right to practice religion

---

[2] In rejecting the Plaintiff's argument that the regulation neded to be justified by a compelling governmental interest, the Supreme Court noted:

> Precisely because we are a cosmopolitan nation made up of people of almost every conceivable religious preference, and precisely because we value and protect that religious divergence, we cannot afford the luxury of deeming presumptively invalid, as applied to the religious objector, every regulation of conduct that does not protect an interest of the highest order. The rule respondents favor would open the prospect of constitutionally required religious exemptions from civic obligations of almost every conceivable kind—ranging from compulsory military service to the payment of taxes, to health and safety regulation such as manslaughter and child neglect laws, compulsory vaccination laws, drug laws, and traffic laws, to social welfare legislation such as minimum wage laws, child labor laws, animal cruelty laws, environmental protection laws, and laws providing for equality of opportunity for the races. The First Amendment's protection of religious liberty does not require this.

*Smith*, 494 U.S. at 888–89 (citations and quotations omitted).

freely does not include liberty to expose the community or the child to communicable disease or the latter to ill health or death."). In reference to the Supreme Court's statement in *Prince*, 321 U.S. at 166–67, the Second Circuit has held that this "dictum is consonant with the Court's and our precedents holding that 'a law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice.'" *Phillips v. City of New York*, 775 F.3d 538, 543 (2d Cir. 2015) (citing *Church of the Lukumi Babalu Aye, Inc.*, 508 U.S. at 531) and *Leebaert v. Harrington*, 332 F.3d 134, 143–44 (2d Cir. 2003)). Indeed, in that case, the court found that "New York could constitutionally require that all children be vaccinated in order to attend public school." *Phillips*, 775 F.3d 538, 543 (2d Cir. 2015).

And even more recently, and more pointedly, the Second Circuit has directly addressed religious objections to vaccine mandates in a Connecticut state statute. In *We the Patriots*, plaintiffs objected to the Act's vaccination requirements on religious grounds, citing the "use of 'cell lines descended from aborted fetuses.'" 76 F.4th at 142. Similar to this case the court held that, "[t]he gravamen of the complaint" was "plaintiffs' challenge to the Act under the Free Exercise Clause" *Id.* at 144.

The Second Circuit found that "The Act's legislative history does not contain evidence of hostility to religious believers, even when read with an eye toward 'subtle departures from neutrality' or 'slight suspicion' of 'animosity to religion or distrust of its practices.'" *Id.* at 148. It "conclude[d], as a matter of law, that the Act is neutral within the meaning of *Smith*." *Id*. at 150. The Second Circuit ruled that the Act is neutral and generally applicable and thus subject to rational basis review. *Id* at 156 ("Because the Act and its legislative history contain no trace of hostility toward religion but rather reflect significant accommodations on the part of the

legislature, because the Act does not provide for a system of individualized exemptions, and because it is not substantially underinclusive, it is neutral and generally applicable.").

The Second Circuit then found that the Act satisfied rational basis review. *Id.* ("The Act's requirement that children be vaccinated to attend school – as opposed to participate in "community sports leagues, religious gatherings, and social gatherings of all types," – is rational because only at school is attendance mandated by law. The Act's legacy provision is rationally related because it accommodates religious believers who are already in school without extending that accommodation to younger children. Also rationally related to the State's interest are the Act's other provisions: broadening eligibility for medical exemptions (in part as a way of curtailing misuse of the religious exemption), ensuring consistency in the administration of medical exemptions, and facilitating conversations about vaccination between individuals and healthcare providers. Therefore, plaintiffs have not stated a plausible claim that the Act offends the Free Exercise Clause. Nor have they plausibly claimed the Act imposes unconstitutional conditions on the receipt of education or other state services, because it is a constitutional exercise of Connecticut's police power.") (citations omitted).

Defendants therefore argue that applying these same principles to this indistinguishable statutory scheme, this Court should dismiss Plaintiffs' Complaint. Def. Mot. to Dismiss at 9–15. In their view, Conn. Gen. Stat. § 10-204a is a neutral law of general applicability and is thus subject to rational basis review, which it satisfies. *Id.* at 10. Even if the Act were subject to strict scrutiny, Defendants argue that Conn. Gen. Stat. § 10-204a would survive because it protects a compelling interest and is narrowly tailored. *Id.* at 22. They argue that existing caselaw establishes that the state has a compelling interest in maximizing school vaccinations as a matter of law and that Conn. Gen. Stat. § 10-204a is more narrowly tailored than necessary because it

could have required all K-12 children to be vaccinated, but it instead permitted unvaccinated K-12 students with existing religious exemptions to enroll. *Id.* at 24.

In response, Plaintiffs argue that the existing Supreme Court cases no longer control for the following three reasons. Pl. Opp. at 10–11. First, in their view the Supreme Court adopted its "shadow docket" decision, *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S.Ct. 63 (2020) and Plaintiffs argue it establishes that "even during a public health emergency, the First Amendment's prohibition on the attachment of special disabilities to religion still applies in full force." *Id.* at 11. Second, they argue that two of the cases, *Jacobson* and *Zucht*, did not involve assertions of First Amendment rights. Third, they argue that *Zucht* "only presented a generalized claim of a Fourteenth Amendment liberty interest against a school vaccination mandate and a vague equal protection claim." *Id.*

Plaintiffs also argue that the existing Second Circuit precedent that Defendants cite does not control, stating that "while *Phillips*' holding was that New York's temporary exclusion of children holding religious exemptions from school during a chickenpox outbreak was constitutional, it did not establish a categorical determination of the constitutionality of school vaccinations." Pl. Opp. at 13. Instead, Plaintiffs argue that none of the other Supreme Court or Second Circuit decisions should apply here, and that *M.A. on behalf of H.R.,* 53 F.4th 29, should control instead.

More specifically, as to the applicability of the Second Circuit's recent decision in *We the Patriots*, Plaintiffs argue that: (1) they are only arguing about preschools, not about K-12 schools, (2) here, the state argues that they do not have an interest in regulating private K-12

schools, and (3) *We the Patriots* did not analyze the comparability of a grandfather exemption to future religious exemptions.

As to the application of the strict scrutiny standard, Plaintiffs argues that the Defendants could have: (1) required "parents to complete sworn statements explaining their religious beliefs and requiring a presentation on the importance of taking vaccinations and common misconceptions about them[,]" (2) "permitted the Plaintiffs and similarly situated parents the ability to send their children to private religious schools, pre-schools, and daycares without forcing them to choose between their faith and their children's futures[,]" or (3) "articulated a threshold percentage of vaccinated students needed to achieve herd immunity and divided exemptions to the vaccination requirement in a non-discriminatory manner between medical and religious objectors." Pl. Opp. at 20. Having failed to adopt any of these reasonable alternatives, in the Plaintiffs' view, Conn. Gen. Stat. § 10-204a "cannot satisfy the narrow tailoring element." Pl. Opp. at 19.

The Court disagrees.

As a preliminary matter, in deciding legal issues, the role of this Court is not to selectively apply the law to suit a party's objectives, but to apply binding precedent to the circumstances presented in any given case. *See Kimble v. Marvel Ent*., LLC, 576 U.S. 446, 455, (2015) ("Stare decisis—in English, the idea that today's Court should stand by yesterday's decisions—is 'a foundation stone of the rule of law.' Application of that doctrine, although 'not an inexorable command,' is the 'preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process.' It also reduces incentives for challenging settled precedents, saving parties and courts the expense of endless

relitigation.") (citations omitted). This Court thus declines to accept the invitation of the

Plaintiffs to apply the law as it might be, or perhaps, as any one party believes the law should be.

*Id.* at 455–56 ("an argument that we got something wrong—even a good argument to that

effect—cannot by itself justify scrapping settled precedent. Or otherwise said, it is not alone

sufficient that we would decide a case differently now than we did then."). And because the

Second Circuit has spoken and spoken clearly on a related, if not identical, legal issue, in *We the*

*Patriots*, this Court will not cast about to construe that ruling for anything other than what the

Second Circuit stated it to be.[3] As a result, this Court will review the statute to determine

whether it is neutral and generally applicable, and if so, apply rational basis review.

First, "[t]o determine the object of a law, we must begin with its text, for the minimum

requirement of neutrality is that a law not discriminate on its face" *M.A. on behalf of H.R.*, 53

F.4th at 37 (citing *Lukumi*, 508 U.S. at 533). There is nothing in the text of Conn. Gen. Stat. §

10-204a, which targets religious conduct.[4] Nor has the Plaintiff identified, much less alleged, in

---

[3] To the extent that *Kravitz v. Purcell*, --- F.4th ---, No. 22-764, 2023 WL 8177114 (2d Cir. Nov. 27, 2023), addressed *Smith*, 494 U.S. 872, it is inapposite here because the Second Circuit in *Kravitz* did not discuss or otherwise address its decision in *We the Patriots*, one directly applicable to this case.

[4] Conn. Gen. Stat. § 10-204a states: "Each local or regional board of education, or similar body governing a nonpublic school or schools, shall require each child to be protected by adequate immunization against diphtheria, pertussis, tetanus, poliomyelitis, measles, mumps, rubella, haemophilus influenzae type B and any other vaccine required by the schedule for active immunization adopted pursuant to section 19a-7f before being permitted to enroll in any program operated by a public or nonpublic school under its jurisdiction. Before being permitted to enter seventh grade, a child shall receive a second immunization against measles. Any such child who (1) presents a certificate from a physician, physician assistant, advanced practice registered nurse or local health agency stating that initial immunizations have been given to such child and additional immunizations are in process (A) under guidelines and schedules specified by the Commissioner of Public Health, or (B) in the case of a child enrolled in a preschool program or other prekindergarten program who, prior to April 28, 2021, was exempt from the appropriate provisions of this section upon presentation of a statement that such immunizations would be contrary to the religious beliefs of such child or the parents or guardian of such child, as such additional immunizations are recommended, in a written declaration, in a form prescribed by the Commissioner of Public Health, for such child by a physician, a physician assistant or an advanced practice registered nurse; or (2) presents a certificate, in a form prescribed by the commissioner pursuant section 19a-7a, from a physician, physician assistant or advanced practice registered nurse stating that in the opinion of such physician, physician assistant or advanced practice registered nurse such immunization is medically contraindicated because of the physical condition of such child; or (3) in the case of measles, mumps or rubella, presents a certificate from a physician, physician assistant or advanced practice registered nurse or from the director of health in such child's present or previous town of residence, stating that the child has had a confirmed case of such disease; or (4) in the case of haemophilus influenzae type B has passed such

the "Act's legislative history . . . evidence of hostility to religious believers, even when read with an eye toward subtle departures from neutrality or slight suspicion of animosity to religion or distrust of its practices." *We the Patriots*, 76 F.4th at 148 (citations and internal quotation marks omitted).

To be clear, Plaintiffs do argue that Conn. Gen. Stat. § 10-204a is not a neutral law and that it "specifically targeted religious practices that it disagreed with – refusing to take a vaccine because of its ingredients – and it eliminated any tolerance for those religious beliefs by completely foreclosing all avenues for parents who hold religious beliefs against taking vaccines to education their children at al." Pl. Opp. at 14. But this argument rests not on anything contained in the text of the Conn. Gen. Stat. § 10-204a, or in any of the statute's legislative history.[5] Instead, it is based on Plaintiffs contention that Defendants' failure to eliminate medical exemptions and legacy exemptions undermines their stated goal of protecting children's and community health. Pl. Opp. at 17 ("Connecticut has specifically acted against conduct with a religious motivation by amending Conn. Gen. Stat. § 10-204a to extend its mandate to religious conduct despite its prior longstanding tolerance for it. It took that specific action a step further by crafting a law that would ensure the exclusion of the faithful from every possible form of education – all while scrupulously permitting a separate secular category of conduct that

---

child's fifth birthday; or (5) in the case of pertussis, has passed such child's sixth birthday, shall be exempt from the appropriate provisions of this section. The statement described in subparagraph (B) of subdivision (1) of this subsection shall be acknowledged, in accordance with the provisions of sections 1-32, 1-34 and 1-35, by a judge of a court of record or a family support magistrate, a clerk or deputy clerk of a court having a seal, a town clerk, a notary public, a justice of the peace, an attorney admitted to the bar of this state, or notwithstanding any provision of chapter 6,1 a school nurse."

[5] The Second Circuit already took judicial notice of the legislative history of the Act, which this Court may do as well, regardless. *Goe v. Zucker*, 43 F.4th 19, 20 (2d Cir. 2022) ("as a fundamental matter, courts may take judicial notice of legislative history").

undermines its interests equally to stand untouched"), thus rendering any stated justification a mere cover for religious animus. *Id.* at 17–18.

But that argument failed before the Second Circuit in *We the Patriots*. *See id.* at 149 ("Connecticut's amended school immunization law mentions religion only to provide legacy exemptions. It contains no suggestion of hostility to religion."); *id.* at 156 ("The Act's legacy provision is rationally related because it accommodates religious believers who are already in school without extending that accommodation to younger children."). And there is no intervening caselaw from the Second Circuit – since August of this year (less than four months later)—or elsewhere suggesting that this case should be decided any differently.

To the extent that Plaintiffs are suggesting that discovery should take place, consistent with Judge Bianco's opinion in *We the Patriots*, concurring in part, and dissenting in part, *see id.* at ("A determination that plaintiffs have plausibly asserted such a free exercise claim would not invalidate the Act, but rather would allow plaintiffs to conduct discovery on, *inter alia*, the disputed factual issues that bear upon what level of scrutiny should apply in reviewing the constitutionality of the Act under the Free Exercise Clause."), because Judge Bianco's dissenting opinion as to the appropriate level of scrutiny and any discovery necessary in that case did not carry the day, this Court cannot simply adopt this position, while remaining faithful to prevailing precedent. *See id.* at n.18 ("[O]n the dissent's logic, the Act would better withstand a free exercise challenge if it were *less* solicitous of religious concerns. That proposition is inconsistent with the principle that government may act with 'benevolent neutrality' toward religion, and

cannot be the law . . . . [T]he accommodations the General Assembly provided struck a rational balance between the competing goods legislators were weighing.").

In any event, it is Plaintiffs' "obligation to provide the 'grounds' of his 'entitle[ment] to relief' [which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (2007). "[M]ere conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 663–64 (citations omitted). Yet, there is nothing in Plaintiffs' Complaint or any argument in support thereof, besides "mere conclusions."[6] Put another way, Plaintiffs argue that the Defendants' stated goal of minimizing exposure from unvaccinated students is undermined by the remaining allowed exceptions (legacy or medical exemptions). But allegations in Plaintiffs' Complaint are insufficient to suggest that allowing the remaining exemptions would create a material difference in the public health, much less that these limited exemptions undermine the overall public health goals of the statute as a whole.[7]

Thus, with this Act's legislative history already reviewed by the Second Circuit and found that "[f]ar from expressing hostility, legislators accommodated religious objectors to an

---

[6] For example, Plaintiffs have alleged that pharmaceutical companies "use cell lines artificially developed from aborted fetuses to research develop, test and product [sic] their vaccines." Complaint ¶ 18. This broad conclusory statement is central to their claim, but Plaintiffs have not specifically alleged which of the vaccines mandated by Conn. Gen. Stat. § 10-204a, if any, implicates their sincere religious concerns.

[7] Indeed, when asked at the motion to dismiss hearing as to what relevant discovery would be pursued, counsel for Plaintiff's counsel responded: "I don't know what I don't know." In contrast, the Defendants have provided data about the small percentage of medical exemptions, and the risks to public health when there is less than 95% immunity from the rising number of exemptions. Mot. to Dismiss at 3–4; Exhibit A, ECF No. 23-2 ("The percentage of kindergarten students with a religious exemption decreased by 0.2% compared with last year, and is now 2.3%. The national average during 2019–20 for non-medical exemptions is 2.2%. The percentage of kindergarten students with a religious exemption has increased 0.9% since 2012–2013. The percentage of kindergarten students with a medical exemption remains fairly constant, at 0.2% in 2019–2020, compared with 0.3% during previous years.")

extent the legislators believed would not seriously undermine the Act's goals[,]" Plaintiffs fail to meet their burden to allege more than conclusory statements about the Act's legislative purpose.

Accordingly, as did the Second Circuit in *We the Patriots* with the same statute, this Court finds that Conn. Gen. Stat. § 10-204a is a neutral law.

As to the general applicability standard, the government may not selectively impose a burden only on conduct motivated by religious belief. *M.A. on behalf of H.R.*, 53 F.4th at 38 (The general applicability requirement prohibits the government from 'in a selective manner impos[ing] burdens only on conduct motivated by religious belief.'") (quoting *Lukumi*, 508 U.S. at 543)*; see also Cent. Rabbinical Cong. of the U.S. & Can.*, 763 F.3d 197 (2d Cir. 2014) ("A law is therefore not generally applicable if it is substantially underinclusive such that it regulates religious conduct while failing to regulate secular conduct that is at least as harmful to the legitimate government interests purportedly justifying it."). Here, the conduct regulated by Conn. Gen. Stat. § 10-204a—requiring vaccination before attending school—is applied to everyone regardless of religious or secular objections.

The secular conduct permitted—exemptions for medical reasons—does not "undermine[] the government's asserted interests in a similar way," *Fulton v. City of Philadelphia, Pennsylvania*, 141 S. Ct. 1868, 1877 (2021). These medical exemptions—because they are limited in number—are not "at least as harmful to the legitimate government interest purportedly justifying it," *Cent. Rabbinical Cong.* at 197. The other remaining exemption, any existing religious exemption does not "prohibit[] religious conduct while permitting secular conduct[,]"

*Fulton* at 1877, because it is simply protects previously taken religious conduct while remaining silent on secular conduct.

Accordingly, Conn. Gen. Stat. § 10-204a is generally applicable.

Because Conn. Gen. Stat. § 10-204a is neutral and generally applicable, this statute is subject to rational basis review. *See We the Patriots*, 76 F.4th at 156 ("Because the Act and its legislative history contain no trace of hostility toward religion but rather reflect significant accommodations on the part of the legislature, because the Act does not provide for a system of individualized exemptions, and because it is not substantially underinclusive, it is neutral and generally applicable. The district court did not err, therefore, when it concluded the Act is subject rational basis review."). Under rational basis review, Plaintiffs' free exercise claim fails.

In *We the Patriots*, the Second Circuit held that that "protecting public health is a compelling government interest," *id.*, and that "Act's repeal of the religious exemption is rationally related to that interest because it seeks to maximize the number of students in Connecticut who are vaccinated against vaccine-preventable diseases." *Id*. To the extent that statute required "children be vaccinated to attend school – as opposed to participate in community sports leagues, religious gatherings, and social gatherings of all types, [it] is rational because only at school is attendance mandated by law." *Id.* (citations and internal quotation marks omitted). With respect to that Act's exemptions, the "legacy provision is rationally related because it accommodates religious believers who are already in school without extending the accommodation to younger children. Also rationally related to the State's interest are the Act's other provisions: broadening eligibility for medical exemptions (in part as a way of curtailing misuse of the religious exemption), ensuring consistency in the administration of medical

exemptions, and facilitating conversations about vaccination between individuals and healthcare providers." *Id.*

This Court sees no reason to reach a different result. To the extent that Plaintiffs rely on minor factual distinctions, such as this statute's application to preschools, and the different grandfathering provisions, these arguments fail. As discussed above, Plaintiffs rely on "mere conclusions" about differing public health effects. Their Complaint is insufficient to support the notion that the Defendants' stated public health benefits at the time of the statute's enactment lacked merit, or otherwise masked latent religious animus as an unstated goal. *Iqbal*, 556 U.S. at 663-64 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . . While legal conclusions can provide the complaint's framework, they must be supported by factual allegations.") (citation omitted).

As in *Smith*, Plaintiffs argue for a rule that, if followed, "would open the prospect of constitutionally required religious exemptions from civic obligations of almost every conceivable kind—ranging from compulsory military service to the payment of taxes, to health and safety regulation such as manslaughter and child neglect laws, compulsory vaccination laws, drug laws, and traffic laws, to social welfare legislation such as minimum wage laws, child labor laws, animal cruelty laws, environmental protection laws, and laws providing for equality of opportunity for the races." *Smith*, 494 U.S. at 888–889. And as in *Smith*, and consistent with

what the Second Circuit held in *We the Patriots*, this Court too holds that: "The First Amendment's protection of religious liberty does not require this." *Id.* at 889.

Accordingly, applying the rational basis standard to Conn. Gen. Stat. § 10-204a. the Defendants' motion to dismiss on this ground will be granted.[8]

### B. The Free Speech Claim

A basic First Amendment principle is that "freedom of speech prohibits the government from telling people what they must say." *Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*, 547 U.S. 47, 61 (2006) (citing *West Virginia State Bd. of Ed. v. Barnette*, 319 U.S. 624, 642 (1943) and *Wooley v. Maynard*, 430 U.S. 705, 717 (1977)). "At the heart of the First Amendment lies the principle that each person should decide for himself or herself the ideas and beliefs deserving of expression, consideration, and adherence." *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 213 (2013) (quoting *Turner Broadcasting System, Inc. v. FCC*, 512 U.S. 622, 641 (1994)).

"But [a] law's effect on speech [may] be only incidental to its primary effect on conduct, and 'it has never been deemed an abridgment of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed.'" *Expressions Hair Design v. Schneiderman*, 581 U.S. 37, 47 (2017) (citing cases); *see also 44 Liquormart, Inc. v. Rhode*

---

[8] While Defendants argue that, even if the strict scrutiny was applied, Conn. Gen. Stat. § 10-204a. would survive this standard of review as well, this Court, like the Second Circuit in *We the Patriots*, "need not and do not decide whether the Act would also satisfy strict scrutiny." *We the Patriots*, 76 F. 4th at 156.

*Island*, 517 U.S. 484, 512 (1996) ("the First Amendment directs that government may not suppress speech as easily as it may suppress conduct").

Defendants argue that Conn. Gen. Stat. § 10-204a does not violate Plaintiffs right to free speech because a school vaccination law requiring all public and private schools to require their students to be vaccinated against certain communicable diseases before permitting them to enroll is not a cognizable injury under the First Amendment. Def. Mot. to Dismiss at 25–27. Defendants argue that the Supreme Court's decision in *Rumsfeld*, 547 U.S. 47 (2006), is instructive and controlling here. *Id.*

In response, Plaintiffs have two arguments: (1) "Defendants have conditioned their state constitutional right to provide and receive an education on the utterance of speech with which they do not agree," and (2) "Defendants' enforcement of Conn. Gen. Stat. § 10-204a prohibits them from engaging in expressive activity that is constitutionally protected." Pl. Opp. at 26–27.

The Court disagrees.

"[A]n incidental burden on speech is no greater than is essential, and therefore is permissible . . . so long as the neutral regulation provides a substantial governmental interest that would be achieved less effectively absent the regulation." *Rumsfeld*, 547 U.S. at 67. To the extent that mandating the vaccination of students affects the Plaintiffs' speech rights, it is "an incidental burden" related to a "neutral regulation" for "substantial" public health reasons, an interest not achievable by not requiring vaccinations, despite any "incidental" message it sends Plaintiffs' about their religion. *Cf. id.* ("The issue is not whether other means of raising an army and providing for a navy might be adequate. That is a judgment for Congress, not the courts. It suffices that the means chosen by Congress add to the effectiveness of military recruitment."). Indeed, as Defendants point out: "The statute in no way limits the Plaintiffs' ability to express

their opinions on the school vaccination law and disassociate themselves from the requirements, all while retaining the ability to operate their program." Def. Mot. to Dismiss at 27.

Accordingly, the Court will grant Defendants' motion to dismiss Plaintiffs' First Amendment freedom of speech claim.

### C. The Freedom of Association Claim

The First Amendment protects the "right of the people peaceably to assemble." U.S. Const. Amend. I. "However, courts have long held that the constitutional right to assembly—like the right to free speech—is not absolute." *Amato v. Elicker*, 460 F. Supp. 3d 202, 219 (D. Conn. 2020) (citing *Jones v. Parmley*, 465 F.3d 46, 56 (2d Cir. 2006)). For example, the government may infringe on first amendment rights if there is a "clear and present danger of riot, disorder, interference with traffic upon the public streets, or other immediate threat to public safety, peace, or order, appears." Jones, 465 F.3d at 56–57 (quoting *Cantwell v. Connecticut*, 310 U.S. 296, 308 (1940)).

Defendants argue that requiring vaccinations for school aged children does not impact the Plaintiffs' right to associate. Def. Mot. to Dismiss at 27–30. They argue that First Amendment rights are subject to "reasonable conditions" to preserve public health and Conn. Gen. Stat. § 10-204a is a reasonable condition that safeguards children's and communities from contagious diseases. *Id.* at 30.

In response, Plaintiffs argue that the "sheer harshness" of § 10-204a goes too far and "the Defendants' interpretation and enforcement of it completely deprives the Plaintiffs of their rights to freedom of association." Pl. Opp. at 31–32. They argue that "Defendants seek to isolate and

break the spirit of every parent and child whose religious beliefs will not allow them to comply with § 10-204a's mandate." Pl. Opp. at 33.

The Court disagrees.

As the Supreme Court stated long ago, in upholding a mandatory vaccination requirement, "the liberty secured by the Constitution of the United States to every person within its jurisdiction does not import an absolute right in each person to be, at all times and in all circumstances, wholly freed from restraint. There are manifold restraints to which every person is necessarily subject for the common good." *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11, 26 (1905).

More recently, the Supreme Court further clarified that an incidental impact on expression, which does not silence the ability of a group's message, even though it may require compliance in some other ways, does not violate any First Amendment associational right. *See Rumsfeld*, 547 U.S. at 69 ("Students and faculty are free to associate to voice their disapproval of the military's message; nothing about the statute affects the composition of the group by making group membership less desirable. The Solomon Amendment therefore does not violate a law school's First Amendment rights. A military recruiter's mere presence on campus does not violate a law school's right to associate, regardless of how repugnant the law school considers the recruiter's message.").

Under this standard, Conn. Gen. Stat. § 10-204a does not limit the Plaintiffs' membership in any group; they are free to continue to advocate against vaccinations as a matter of conscience; and they also are free to decide not to associate with any school, or other institutions where they are required to be vaccinated. *Cf. Rumsfeld*, 547 U.S. at 70 ("To the extent that the Solomon Amendment incidentally affects expression, the law school's effort to cast themselves

28

as just like the schoolchildren in *Barnette*[9], the parade organizers in *Hurley*[10], and the Boy Scouts in *Dale*[11] plainly overstates the expressive nature of their activity and the impact of the Solomon Amendment on it, while exaggerating the reach of our First Amendment precedents.").

Accordingly, Defendants' motion to dismiss Plaintiffs' Freedom of Association claim will be granted.

### D. The Equal Protection Clause Claim

The Second Circuit's decision in *We the Patriots* not only addressed the application of the Free Exercise Clause to a similar statutory scheme, but also addressed claims under the Fourteenth Amendment's Equal Protection Clause. There, the Second Circuit rejected any such claim based on age and religion.

As to age, "[u]nder the Equal Protection Clause, claims that the government has discriminated based on age are typically subject to rational basis review because age is not a suspect classification." *We the Patriots*, 76 F.4th at 158 (citing *Gregory v. Ashcroft*, 501 U.S. 452, 470 (1991)). Strict scrutiny would apply, however, if the age-based classification interfered with a fundamental right. *Id.* In applying rational basis review to the age-based claim there, the Second Circuit relied on the Supreme Court's early 20th century decision in *Zucht v. King*, 260 U.S. 174 (1922). There, the Supreme Court upheld a school vaccination mandate against an Equal Protection Clause challenge. *Id.* at 146 (citing to *Zucht*, 260 U.S. at 176–77). And following reasoning similar to rational basis review determined that there was no violation of the

---

[9] *W. Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943) (finding unconstitutional a West Virginia regulation "compelling the flag salute and pledge [because it] transcends constitutional limitations on [West Virginia's] power and invades the sphere of intellect and spirit which it is the purpose of the First Amendment to our Constitution to reserve from all official control.").
[10] *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557 (1995) (holding that private parade organizers' first amendment rights prevented them from being required to include an LGBT group in their parade).
[11] *Boy Scouts of Am. v. Dale*, 530 U.S. 640 (2000) (holding that the Boy Scouts' First Amendment right of expressive association protected them from being required to admit a gay activist whose membership had been revoked.).

Equal Protection Clause. *Id.* (citing *Zucht*, 260 U.S. at 177, for the proposition that "in the exercise of the police power reasonable classification may be freely applied and [a] regulation is not violative of the equal protection clause merely because it is not all embracing.").

For reasons similiar to its analysis of the Free Exercise Clause claim already, the Second Circuit in *We the Patriots* rejected the application of strict scrutiny to any age-based claim, reasoning that the Court had "already concluded that the Act does not impermissibly burden plaintiff's free exercise rights." *Id.* at 158 (citation omitted). The Second Circuit then held that the law "is rationally related to the State's interest in protecting the health and safety of Connecticut's students." *Id.* at 159.

Here, Defendants argue that because the Supreme Court in *Zucht*, already rejected an equal protection challenge to a compulsory school vaccination law, Plaintiffs' claim does not survive. Def. Mot. to Dismiss at 31.

More specifically, Defendants argue that Conn. Gen. Stat. § 10-204a makes no distinctions based on religion, rather the only classification it makes is "between children who have a medical need for an exemption and those who do not." Def. Mot. to Dismiss at 31. They argue that this causes Plaintiffs' claim to fail as a matter of law because "[c]hildren with a medical need for an exemption are not 'similarly situated' to children with no such need." *Id.* Defendants further argue that even if they were similarly situated, the classification between health and non-health exemptions would be subject to rational basis review because it does not involve a suspect class or burden a fundamental right. *Id.* at 32. For reasons already argued

above, Defendants argue that Conn. Gen. Stat. § 10-204a would survive both rational basis review and strict scrutiny. *Id.* at 32–33.

Defendants also argue that even assuming that Conn. Gen. Stat. § 10-204a creates an age distinction, Plaintiffs have failed to state an equal protection claim because K-12 children who previously sought religious exemptions are not similarly situated to pre-K children who had sought exemptions.

In response, Plaintiffs argue that *Zucht* does not apply and that the Conn. Gen. Stat. § 10-204a is burdening a fundamental right (religion) and is thus subject to strict scrutiny, which it does not pass. Pl. Opp. at 33–38. Plaintiffs also argue that the deprivation is not viewpoint neutral because vaccinations are only required for preschool and daycare and not, for example, for Sunday school, church baseball teams, or other religious gatherings. *Id.* at 32.

Plaintiffs also argue that they "tie their equal protection claims to the burden that § 10-204a imposes on their fundamental constitutional rights to freely exercise their religion and associate with each other for the purpose of doing so." Pl. Opp. at 33. They argue that because the statute burdens the exercise of a fundamental right, the statute's classification must pass strict scrutiny, which it does not. *Id.* at 33–34. Plaintiffs further argue that under *Williams v. Rhodes*, 393 U.S. 23, 30–34 (1968), they only need to demonstrate a burden on a fundamental constitutional right, not a plausible First Amendment claim, for the law to be subject to strict scrutiny. *Id.* at 34. Additionally, Plaintiffs argue that "religious convictions and education are indispensable parts of mental health" and so one who qualifies for a religious exemption is similarly situated to one who qualifies for a medical exemption. *Id.* at 35–36.

Finally, Plaintiffs argue that "in sum, § 10-204a is a law that functionally says 'if you were old enough at the time this act becoming law, we will respect your religion. If not, too bad.

Your religious convictions do not matter.'" Pl. Opp. at 37. They argue that § 10-204a "inevitably

will create a class of second-class citizens on the basis of their religious conviction and their

age." *Id.*

The Court disagrees.

> Long before this suit was instituted, *Jacobson v. Massachusetts*
> had settled that it is within the police power of a state to provide
> for compulsory vaccination. That case and others had also settled
> that a state may, consistently with the federal Constitution,
> delegate to a municipality authority to determine under what
> conditions health regulations shall become operative.  And still
> others had settled that the municipality may vest in its officials
> broad discretion in matters affecting the application and
> enforcement of a health law.  A long line of decisions by this court
> had also settled that in the exercise of the police power reasonable
> classification may be freely applied, and that regulation is not
> violative of the equal protection clause merely because it is not all-
> embracing.

> *Zucht*, 260 U.S. at 176–77 (citations omitted).

Plaintiffs fail to distinguish this case from *Zucht*, or to address more pointedly the Second

Circuit's equal protection analysis in *We the Patriots.* They refer to their earlier argument that

*Zucht* does not apply in the context of a free exercise challenge; however, in that earlier

argument they say that *Zucht* involved a Fourteenth Amendment claim and not a First

Amendment assertion. Pl. Opp. at 11 ("neither Jacobson nor Zucht involved assertions of First

Amendment rights") and ("Zucht only presented a generalized claim of a Fourteenth Amendment

liberty interest against a school vaccination mandate and a vague equal protection claim."). Now

in their Fourteenth Amendment claims, following Plaintiffs' own reasoning, *Zucht* should apply.

Pl. Opp. at 33 ("The Defendants first argue that the Plaintiffs' equal protection claims are barred

by Zucht. Dkt. 23-1, p. 31. The Plaintiffs have already discussed why that argument fails

above."). Plaintiffs provide no further response as to why *Zucht* should not apply to an equal

protection claim than referring to their earlier argument. *See* Pl. Opp. at 33–38. In any event, the

Second Circuit's decision in *We the Patriots* has provided a road map for how to analyze an equal protection claim with a statute like this one, and following it requires this claim's dismissal.

On its face, Conn. Gen. Stat. § 10-204a makes no classification based on religion and is thus not subject to strict scrutiny for that reason. *See We the Patriots*, 76 F.4th at 156**.** Plaintiffs' argument that religious exemptions should be treated as if they were mental-health exemptions is unpersuasive because medical exemptions require a documented health risk confirmed by a health care professional. *See* Conn. Gen. Stat. § 10-204a (to be exempt under subsection (2) requires "a certificate, in a form prescribed by the commissioner pursuant section 19a-7a, from a physician, physician assistant or advanced practice registered nurse stating that in the opinion of such physician, physician assistant or advanced practice registered nurse such immunization is medically contraindicated because of the physical condition of such child"). Conn. Gen. Stat. § 10-204a allows existing religious exemptions but not new ones. This will not create a "class of second-class citizens" but rather, it will allow the schoolchildren with existing religious exemptions to graduate each year until no one has a religious exemption. *We the Patriots*, 76 F.4th at 159 ("[t]he class of unvaccinated students who may keep their religious exemptions will diminish as the students graduate, allowing the state to reduce the number of unvaccinated

students, protect the public's health, and balance the expectation interests of parents with currently enrolled students") (citation omitted).

Accordingly, the Court will grant Defendants' motion to dismiss the Equal Protection Clause claim.

### E.  The Child Rearing Claim

In *We the Patriots*, the Second Circuit recognized that "parents have a liberty interest 'in the care, custody, and control of their children,'" 76 F.4th at 159 (quoting *Troxel v. Granville*, 530 U.S. 57, 65–66 (collecting cases)), but that in the context of vaccination mandate case such as that one, any such "liberty interest in childrearing was coextensive with their Free Exercise Clause claim." *Id*. And since the Free Exercise Clause claim there had been "correctly dismissed," *id*., the childrearing claim should be dismissed as well. *Id.* The Court further held that there "the plaintiffs assert no liberty interest in the rearing of their children that is not encompassed in their free exercise claim." *Id.*

Here, Defendants argue that Plaintiffs parental rights challenge fails because (1) it is subsumed within their free exercise challenge, (2) Plaintiffs have not alleged the violation of a fundamental right, and (3) the Second Circuit has agreed that parental rights do not exempt a child from public school requirements.

In response, Plaintiffs argue that the right to child-rearing is fundamental right and that infringing upon it requires strict scrutiny, which Conn. Gen. Stat. § 10-204a fails.

The Court disagrees.

For the same reasons that the Second Circuit dismissed the childrearing claim in *We the Patriots*, this Court will dismiss Plaintiffs' childrearing claim here: in the absence of a viable Free Exercise Clause claim, that claim fails as well. *See id.* at 159 ("[U]pon deciding that the free

34

exercise claim was without merit, the district court correctly dismissed plaintiff's childbearing claim as well.").

      Accordingly, the Court will grant Defendants' motion to dismiss Plaintiffs' childrearing claim.

## IV.    CONCLUSION

      For the foregoing reasons, Defendants' motion to dismiss is **GRANTED**.

      To the extent the deficiencies identified in the factual allegations in Plaintiffs' Complaint can be remedied, Plaintiffs may move for leave to amend the Complaint by **January 19, 2024**.

      If no proposed amended pleading is filed by that date, the Court will instruct the Clerk of Court to enter judgement and close this case.

      **SO ORDERED** at New Haven, Connecticut, this 1st day of December, 2023.

                          /s/ Victor A. Bolden
                          VICTOR A. BOLDEN
                          UNITED STATES DISTRICT JUDGE