UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MILFORD CHRISTIAN CHURCH; et al. | : | |
| | : | DKT No.: 3:23-cv-00304 (VAB) |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| BETH BYE, | : | |
| in her official capacity only, | : | |
| | : | |
| Defendant. | : | July 2, 2025 |

### PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY

The Plaintiffs hereby provide notice to the Court of supplemental authority in the form of the U.S. Supreme Court's decision in *Mahmoud v. Taylor*, No. 24-297 (Jun. 27, 2025).[1] The Plaintiffs submit that the decision informs the Court's decision on what tier of scrutiny to apply to their Free Exercise claims.

*Mahmoud* considered a parental challenge to the inclusion of "LGBTQ+ inclusive" storybooks into an elementary school curriculum and granted a preliminary injunction to Muslim and Catholic parents who sought religious exemptions from the curriculum because of its conflict with their efforts to raise their children in their faith. *Mahmoud*, No. 24-297 at \*\* 1, 11-12. The Supreme Court's decision clarified *Wisconsin v. Yoder*, 406 U.S. 205 (1972), and is directly applicable to this case.

The Supreme Court first reaffirmed the broad principle that parents have the right "direct the religious upbringing of their children." *Mahmoud*, No. 24-297 at \*17 (cleaned up). It also announced that the right is violated by "government policies that substantially interfere with the religious development of children." *Id*. at \*17 (cleaned up). In particular,

---

[1] A copy of the decision is attached for the Court's convenience.

it focused on the First Amendment's protection of "the ability of those who hold religious beliefs of all kinds to live out their faiths in daily life through the performance of religious acts." *Id*. at *18 (cleaned up).

*Mahmoud*'s analysis under these principles examined the religious practices at issue and why the Montgomery School Board's policies burdened them. The Court noted that, "for many Christians, Jews, Muslims, and others, the religious education of children is not merely a preferred practice but rather a religious obligation." *Id*. at *18. Each of the parents in *Mahmoud* demonstrated that they fell within this category. *Id*. at *18. The Court also noted that the First Amendment's protections on this score extend to choices "outside the home." *Id*. at *18. Lastly, the Court found that, "due to financial and other constraints…, many parents have no choice but to send their children to a public school." *Id*. at *19 (cleaned up). Thus, the Supreme Court recognized that the First Amendment limits "the government's ability to interfere with a student's religious upbringing," even "in a public school setting." *Id*. at *19.

To give life to these principles, *Mahmoud* instructs courts to conduct a fact-intensive inquiry into whether "a law substantially interferes with the religious development of a child…." *Id*. at *21 (cleaned up). It necessarily allowed that such an inquiry "will depend on the specific religious beliefs and practices asserted, as well as the specific nature of the educational requirement or curricular feature at issue." *Id*. at *21. The focus of the inquiry though is the "very real threat of undermining the religious beliefs that the parents wish to instill in their children" posed by the requirement at issue. *Id*. at *25.

*Mahmoud* held that the books used by the Montgomery School Board did pose such a real threat because they imposed "upon children a set of values and beliefs that are hostile to their parents' religious beliefs…" and "exert upon children a psychological pressure to conform to their specific viewpoints." *Id*. at *25 (cleaned up). Further, the presentation of the books by authority figures and the normative discussions that would take place would substantially interfere with the parents' ability to direct their children's religious upbringing. *Id*. at *25-26.

A reasonable judge might be tempted to limit *Mahmoud* to the context of an educational curriculum or its specific facts as many courts did with *Yoder*. *Mahmoud* forecloses that approach by repudiating lower courts' approach to *Yoder*: "We have never confined *Yoder* to its facts. To the contrary, we have treated it like any other precedent. We have at times relied on it as a statement of general principles…. And we have distinguished it when appropriate." *Id*. at *29.

Lastly, *Mahmoud* soundly rejected a suggestion that religiously objecting parents have the option to homeschool their children and that this claimed "option" somehow makes the burden of the law less substantial. It noted that education is expensive and that "[i]t is both insulting and legally unsound to tell parents that they must abstain from public education in order to raise their children in their religious faiths, when alternatives can be prohibitively expensive and they already contribute to financing the public schools." *Id*. at **33-34.

All of these principles control this case. The Plaintiffs have pled numerous facts showing how their religious beliefs and practices are a way of life for them. Dkt. 39, ¶¶ 65-106. They have also pled numerous facts that demonstrate that their religious

3

objections to abortion and the use of cell lines artificially derived from electively aborted fetuses in vaccines violates their religious way of life. *Ibid*. They also allege facts that show that they are doing their best to raise their children in accordance with those beliefs. *Ibid*. Their factual allegations also demonstrate that Connecticut's daycare vaccination requirement leaves them with an unconscionable choice between violating their religious beliefs to receive daycare education or being excluded from daycare and schooling. *Mahmoud* makes clear that such a choice is a substantial burden on the Plaintiffs' First Amendment right to raise their children in their faith and that it violates the First Amendment.

For these reasons, the Court must apply strict scrutiny to analyze the Plaintiffs' Free Exercise claims.

                                          The Plaintiffs,

                                          By: /s/ Cameron L. Atkinson /s/
/s/ Audrey J. Lynn /s/
Cameron L. Atkinson, Esq. (ct31219)
Audrey J. Lynn, Esq. (ct31814)
ATKINSON LAW, LLC
122 Litchfield Rd., Ste. 2
P.O. Box 340
Harwinton, CT 06791
Telephone: 203.677.0782
catkinson@atkinsonlawfirm.com
ajatkinson@atkinsonlawfirm.com

4

**CERTIFICATION OF SERVICE**

The undersigned hereby certifies that, on the foregoing date, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties and counsel of record who have appeared by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

/s/ Cameron L. Atkinson /s/