**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

| | |
|---|---|
| MILFORD CHRISTIAN CHURCH, ET AL., *Plaintiffs*, <br><br> v. <br><br> BETH BYE, *in her official capacity only*, *Defendant*. | No. 3:23-cv-0304 (VAB) |

**RULING AND ORDER ON MOTION TO DISMISS**

Milford County Church ("the Church"), James Loomer, Janet Parady, and Jessica Cavarretta (collectively, "Plaintiffs") have filed an Amended Complaint against Beth Bye ("Defendant") alleging Count One, violation of the First Amendment's Free Exercise Clause; Count Two, violation of the First Amendment's Establishment Clause; Count Three, violation of the First Amendment right to free speech; Count Four, violation of the First Amendment right to freedom of association; Count Five, violation of the Equal Protection Clause of the Fourteenth Amendment; and Count Six, violation of the Fourteenth Amendment right to child rearing.

Ms. Bye has moved to dismiss the Amended Complaint.

For the following reasons, the motion to dismiss is **GRANTED**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Allegations

On or about March 1, 2023, Inspector Bridget Merrill from the Connecticut Office of Early Childhood ("OEC") conducted an annual inspection of Milford Christian Church's daycare and preschool ministry, Little Eagles. Am. Compl. ECF No. 39 (June 20, 2024) ¶ 85. Ms. Merrill cited Milford Christian Church for a violation of the Connecticut vaccination requirements for

childcare centers under Conn. Gen. Stat. § 10-204a and ordered Milford Christian Church to submit a corrective action plan by March 15, 2023. *Id.* ¶ 86.

When the Church requested information about its "options" for compliance, in consideration of its "doctrinal teachings and the parents' religious beliefs," Mr. Merrill allegedly directed the Church to "(1) [s]ubmit a corrective action plan outlining a catch-up schedule for the children's vaccinations; (2) expel the non-vaccinated children; or (3) the OEC would close Little Eagles." *Id.* ¶ 87.

To follow Connecticut's vaccination requirements under Conn. Gen. Stat. § 10-204a would allegedly cause Milford Christian Church to either "(1) [a]bandon . . . deeply held religious beliefs to obey the state; (2) violate the biblical command given by Christ himself in the Gospel of Mark, chapter 12, verse 31 to love your neighbor as yourself; or (3) face the closure of an essential ministry that Milford Christian Church has conducted for many years." *Id.* ¶ 88.

Every vaccination mandated by Connecticut's vaccine requirements for childcare centers allegedly was tested on cell lines derived from aborted fetal cells or manufactured using aborted fetal cell lines. *Id.* ¶ 64.

Milford Christian Church teaches its members to "not take part in other people's sin by consuming vaccines manufactured, tested, or otherwise developed using cell lines artificially developed from murdered unborn babies." *Id.* ¶ 81.

### B. Procedural History

On March 6, 2023, Plaintiffs filed a Complaint against Beth Bye, Charlene M. Russell-Tucker, and Manisha Juthani. Compl. (Mar. 6, 2023).

On March 9, 2023, Plaintiffs filed an emergency motion for a temporary restraining order. ECF No. 12 (Mar. 9, 2023).

2

On March 13, 2023, the Court held a telephonic status conference in which the parties agreed to file a proposed briefing schedule. ECF No. 17 (May 13, 2023).

On May 5, 2023, Defendants filed a motion to dismiss with an accompanying memorandum in support. Mot. to Dismiss, ECF No. 23 (May 5, 2023).

On May 30, 2023, Plaintiffs responded to the motion to dismiss and filed an accompanying memorandum of law with it. Objection to Mot. to Dismiss, ECF No. 24 (May 30, 2023).

On June 13, 2023, Defendants replied to Plaintiffs' response to the motion to dismiss. Reply to Response to Mot. to Dismiss, ECF No. 25 (June 13, 2023).

On September 1, 2023, Plaintiffs filed a supplemental memorandum in opposition to the Defendants' motion to dismiss. Supp. Brief to Response to Mot. to Dismiss, ECF No. 29. (Sept. 1, 2023). This supplemental memorandum was filed to address the Second Circuit's recently decided opinion in *We the Patriots USA, Inc. v. Connecticut Office of Early Childhood*, 76 F.4th 130 (2023).

On September 20, 2023, Defendants replied to Plaintiff's supplemental memorandum. Def. Reply to Pl. Supp. Brief, ECF No. 30 (Sept. 20, 2023).

On October 23, 2023, the Court held oral argument on the pending motion to dismiss. Min. Entry, ECF No. 33 (Oct. 23, 2023).

On December 1, 2023, the Court granted the motion to dismiss and dismissed Ms. Juthani and Ms. Russell-Tucker from the case. Order, ECF No. 34 (Dec. 1, 2023). On the same day, the Court found the motion for temporary restraining order and motion for preliminary injunction moot, because of the granting of the motion to dismiss. Order, ECF No. 35 (Dec. 1, 2023).

On January 19, 2024, Plaintiffs filed a motion to amend the Complaint. First Mot. to

Amend, ECF No. 36 (Jan. 19, 2024).

On June 14, 2024, the Court granted the motion to amend the Complaint. Order, ECF No. 38 (June 14, 2024).

On June 20, 2024, Plaintiffs filed an Amended Complaint. Am. Compl.

On October 24, 2024, Ms. Bye filed a motion to dismiss the Amended Complaint with an accompanying memorandum in support. Mot. To Dismiss, ECF No. 48 (Oct. 24, 2024), Memo. in Supp., ECF No. 48-1 (Oct. 24, 2024) ("Memo. in Supp.").

On November 14, 2024, Plaintiffs filed a memorandum in opposition to the motion to dismiss. Memo. in Opp re Mot. to Dimiss, ECF No. 49 (Nov. 14, 2024) ("Memo. in Opp.").

On December 20, 2024, Ms. Bye replied to Plaintiffs' opposition to the motion to dismiss. Reply to Response re Mot. to Dismiss, ECF No. 52 (Dec. 20, 2024) ("Reply").

On July 2, 2025, Plaintiffs filed a notice of additional support regarding the Supreme Court decision in *Mahmoud v. Taylor*, 606 U.S. __ (2025). Notice of Additional Authority Regarding *Mahmoud v. Taylor*, ECF No. 54 (July 2, 2025) ("Notice").

On July 18, 2025, Ms. Bye filed a supplemental brief regarding *Mahmoud v. Taylor*. Supplemental Brief, ECF No. 57 (July 18, 2025).

On July 24, 2025, Plaintiffs filed a reply to the supplemental brief. Response, ECF No. 58 (July 24, 2025).

## II.   STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a

complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "[t]wo working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of the City of New York.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.").

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters

5

of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

## III.    DISCUSSION

Plaintiffs allege that Public Act 21-6, as codified in Conn. Gen. Stat. § 10-204a and Conn. Gen. Stat. § 19a-79, violates the First Amendment's Free Exercise Clause ("Count One"); the First Amendment's Establishment Clause ("Count Two"); the First Amendment right to free speech ("Count Three"); the First Amendment right to freedom of association ("Count Four"); the Fourteenth Amendment's Equal Protection Clause ("Count Five"); and the Fourteenth Amendment right to child rearing ("Count Six"). *See* Am. Compl.

Ms. Bye moves to dismiss the Amended Complaint in its entirety. She argues that all six counts must be dismissed for failure to state a claim because the Amended Complaint does not cure the deficiencies identified in the original Complaint, which the Court previously dismissed. Memo. in Supp. at 1. She contends that Connecticut's vaccination laws are neutral and generally applicable, and the Plaintiffs' constitutional challenges are foreclosed by precedent. *Id.* at 2 (citing *We the Patriots USA, Inc. v. Conn. Office of Early Childhood*, 76 F.4th 130 (2023)). She also argues that Plaintiffs lack standing to challenge K–12 requirements, that the statutes mandating vaccination do not compel speech or restrict association, and that the legacy exemption and foster/homeless student provisions are lawful accommodations. *Id.* at 7–17.

The Court will consider each count in turn.

### A.  The Free Exercise Claim

Under the First Amendment, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const., Amend. 1. This clause, referred to as the Free Exercise Clause, applies to the States through incorporation by the Fourteenth Amendment. *See Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940) ("The First Amendment declares that Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof. The Fourteenth Amendment has rendered the legislatures of the states as incompetent as Congress to enact such laws.").

In *Cantwell*, the Supreme Court recognized that the First Amendment "embraces two concepts—he freedom to believe and freedom to act. The first is absolute but, in the nature of things, the second cannot be. Conduct remains subject to regulation for the protection of society." *Id.* at 304. If a law that incidentally "burdens religious exercise" it may still be constitutional "when it (1) is neutral and generally applicable and (2) satisfies rational basis review." *We the Patriots¸* 76 F.4th at 144 (citing *Employment Division, Department of Human Resources of Oregon v. Smith*, 494 U.S. 872 (1990)).

A law is not neutral "if the government 'proceeds in a manner intolerant of religious beliefs or restricts practices because of their religious nature.'" *Id.* at 145 (quoting *Fulton v. City of Philadelphia*, 593 U.S. 522, 533 (2021)*; see also Church of Lukumi Babalu Aye, Inc. v. City of Hialeah.*, 508 U.S. 520, 533 (1993) ("If the object of a law is to infringe upon or restrict practices because of their religious motivation, the law is not neutral.").  A law can fail the neutrality prong facially, "if it explicitly singles out a religious practice," or it can fail due to improper legislative intent "if it targets religious conduct for distinctive treatment." *We the Patriots USA*, 746 F.4th at 145 (citations omitted). In determining "whether the government

has acted neutrally, courts look to factors such as the background of the challenged decision, the sequence of events leading up to its enactment, and the legislative or administrative history." *Id.* (citation omitted). "[I]t is not enough for a law to simply *affect* religious practice; the law or the process must demonstrate hostility to religion." *Id.* (citations and internal quotation marks omitted) (emphasis in original).

"The general applicability requirement prohibits the government from 'in a selective manner impos[ing] burdens only on conduct motivated by religious belief.'" *Cent. Rabbinical Cong. of U.S. & Canada v. New York City Dep't of Health & Mental Hygiene*, 763 F.3d 183, 196 (2d Cir. 2014) (citing *Church of Lukumi Babalu Aye, Inc.*, 508 U.S. at 543). In determining whether a law is generally applicable, courts look at "individualized exemptions" and whether the law is "substantially underinclusive." *We the Patriots*, 76 F.4th at 150. A law with individualized exemptions that "invite[s] the government to consider the particular reasons for a person's conduct" is not generally applicable. *Fulton*, 593 U.S. at 533 (cleaned up). And, a law is not generally applicable if it "regulates religious conduct while failing to regulate secular conduct that is at least as harmful to the legitimate government interests purportedly justifying it." *We the Patriots USA, Inc., v. Hocul*, 17 F.4th 266, 285 (2d Cir. 2021) (quoting *Central Rabbinical Congress of U.S. Canada v. New York City Dept. of Health and Hygiene*, 763 F.3d 183, 197 (2d Cir. 2014)).

"Where a law is both neutral and generally applicable, rational basis review applies." *M.A. on behalf of H.R. v. Rockland Cnty. Dep't of Health*, 53 F.4th 29, 36 (2d Cir. 2022) (citing *Kane v. de Blasio*, 19 F.4th 152, 166 (2d Cir. 2021)); *see also Smith*, 494 U.S. at 879 ("[D]ecisions have consistently held that the right of free exercise does not relieve an individual of the obligation to comply with a 'valid and neutral law of general applicability on the ground

that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes).'" (quoting *United States v. Lee*, 455 U.S. 252, 263, n.3 (1982))). But, "[i]f the law is not neutral or not generally applicable, it is subject to strict scrutiny, and the burden shifts to the government to establish that the law is narrowly tailored to advance a compelling interest." *We the Patriots*, 746 F.4th at 144; *see also Cent. Rabbinical Cong. of U.S. & Canada*, 763 F.3d at 196 ("But where such purposeful and exclusive regulation exists—where the object of the law is itself the regulation of religious conduct—the law is subject to heightened scrutiny, and not to rational basis review.").

Based on these principles, the Supreme Court and the Second Circuit have repeatedly rejected free exercise challenges to vaccination requirements. *See Phillips v. City of New York*, 775 F.3d 538, 543 (2d Cir. 2015) ("[F]ollowing the reasoning of *Jacobson* and *Prince*, that mandatory vaccination as a condition for admission to school does not violate the Free Exercise Clause."); *Prince v. Massachusetts*, 321 U.S. 158, 166–67 (1944) ("The right to practice religion freely does not include liberty to expose the community or the child to communicable disease or the latter to ill health or death."); *We the Patriots*, 76 F.4th at 156 (applying rational basis review and ultimately denying free exercise challenge to Connecticut's vaccine requirements).

In 2021, the Connecticut legislature passed An Act Concerning Immunizations, Public Act 21-6, which amended its vaccination requirements for schools to remove religious exemptions. *See We the Patriots USA v. Connecticut Dep't of Early Childhood*, 76 F.4th 130, 135 (2d Cir. 2023) ("Public Act 21-6 . . . revised the Connecticut General States to, inter alia, repeal the religious exemptions . . . .").

Conn. Gen. Stat. § 19a-79 requires children attending "any child care center or group child care home" to receive "age-appropriate" "immunization against diphtheria, pertussis,

tetanus, poliomyelitis, measles, mumps, rubella, haemophilus influenzae type B and any other vaccine required by the schedule of active immunization adopted pursuant to section 19a-7f." Conn. Gen. Stat. § 19a-79(a)(1). Upon passage of Public Act 21-6, any child enrolled in a preschool program who had not received the required immunization prior to April 28, 2021, because they "were contrary to religious beliefs," had until September 1, 2022, to receive the vaccines. *Id.* § 19a-79(c).

Conn. Gen. Stat. § 10-204a similarly requires immunizations for children attending schools serving kindergarten through twelfth grade ("K–12"). *See* Conn. Gen. Stat. § 10-204a(a) ("Each local or regional board of education, or similar body governing a nonpublic school or schools, shall require each child to be protected by adequate immunization against diphtheria, pertussis, . . . ., and any other vaccine required by the schedule . . . before being permitted to enroll in any program operated by a public or nonpublic school under its jurisdiction."). Any child enrolled in K–12 education not vaccinated by April 28, 2021, for religious reasons was permanently exempt from all vaccination requirements. *Id.* § 10-204a(b) (referred to as the "legacy provision").

Plaintiffs allege that Connecticut's vaccination mandate for preschools, codified in Conn. Gen. Stat. § 19a-79, violates their rights to free exercise of their religion under the First Amendment. Am. Compl. ¶ 137. Specifically, they allege that the mandate is not neutral because it reflects animus toward religious exercise. They allege that the vaccine mandate laws intentionally targeted religious exemptions while ignoring other significant contributors to sub-95% vaccination rates, thus revealing a discriminatory intent. Am. Compl. ¶ 122. They argue that although the legislature justified the removal of religious exemptions by citing the goal of maintaining a 95% MMR vaccination threshold, it took no corresponding action against other

sources of non-compliance, including medical exemptions, services to homeless and foster children, and unlicensed religious preschools, that similarly or more severely undermine this interest. Am. Compl. ¶¶ 120, 122, 123, 127, 130, 134.

Ms. Bye argues that Count One should be dismissed because the Court's previous analysis dismissing Plaintiffs' free exercise claim still applies, that Plaintiffs' additional factual allegations do not change the Court's prior analysis, and that Plaintiffs lack standing to challenge vaccination mandates for K–12 education. Memo. in Supp. at 6–9.

In response, Plaintiffs acknowledge they do not have standing to challenge K–12 vaccination requirements, state that they do not seek relief for K–12 education vaccination requirements, and argue that additional facts alleged about non-religious exemptions— specifically for homeless students, groups of parents hosting daycares and preschools, nonpublic K–12 schools, and the legacy provision—demonstrate the vaccine mandate's religious animus. Memo. in Opp. at 8–21. Plaintiffs also argue that the law of the case does not require dismissal of this claim, *id.* at 9–15, and that their claim should be assessed under strict scrutiny because the Supreme Court decision *Employment Div. v. Smith* is "inconsistent with the First Amendment's text, history, and tradition," *id.* at 22.

Ms. Bye replies that any exemptions and exceptions pointed to by Plaintiffs are "baseless" or do not demonstrate religious animus, and reiterate that this Court's and the Second Circuit's previous rulings on Connecticut's vaccination mandates are still applicable here. Reply at 2–3, 4.

The Court agrees.

At the outset, given that Plaintiffs acknowledge that they do not have standing to challenge Connecticut's K–12 vaccination mandate and voluntarily withdraw any challenge to

11

this requirement, the Court will focus only on vaccine requirements for preschools and daycares in this section.

This Court and the Second Circuit in *We the Patriots* have previously determined that Public Act 21-6 is "neutral and generally applicable" and therefore subject to rational basis review. *See* Order at 21, ECF No. 34 ("Because Conn. Gen. Stat. § 10-204a is neutral and generally applicable, this statute is subject to rational basis review."); *We the Patriots*, 76 F.4th at 156 ("Because the Act and its legislative history contain no trace of hostility toward religion but rather reflect significant accommodations on the part of the legislature, because the Act does not provide for a system of individualized exemptions, and because it is not substantially underinclusive, it is neutral and generally applicable. The district court did not err, therefore, when it concluded the Act is subject to rational basis review.").

Plaintiffs' additional factual allegations do not change this outcome. As explained in greater detail below, Plaintiffs' inclusion of additional vaccination data and allegations related to medical exemptions, the legacy provision, lack of enforcement mechanisms of the vaccine requirement in nonpublic K–12 schools, alleged non-enforcement against unlicensed daycares, and grace periods for homeless and foster children are all insufficient to demonstrate that Conn. Gen Stat. § § 19a-79 is not neutral and generally applicable.

First, Plaintiffs highlight data on vaccinations rates and non-compliance rates, arguing that it demonstrates that the Connecticut General Assembly intended the passage of Public Act 21-6 to be "a 'day of reckoning' for religiously faithful parents and passed a law where religious conduct was the sole target of the law." Memo. in Opp. at 10. But none of the provided data suggests that the Connecticut legislature was acting with hostility towards a religious practice. Instead, as the Second

12

Circuit concluded, the legislative history of Public Act 21-6 "does not contain evidence of hostility toward religious believers." *We the Patriots* 76 F.4th at 148.

As to medical exemptions, Plaintiffs include additional allegations that medical exemptions "undermine[] Connecticut's interest in a vaccine mandate," while religious exemptions do not. *See* Am. Compl. ¶¶ 123, 127–28; Memo. in Opp. at 13 ("Thus, religious exemptions did not undermine Connecticut's interests so far as to require their categorical outlawing."). Thus, Plaintiffs argue, Public Act 21-6 is substantially underinclusive and therefore not generally applicable. Memo. in Opp. at 13.

The Second Circuit, however, has already considered the existence of medical exemptions when upholding Public Act 21-6 and ultimately concluded that "religious and medical exemptions are not comparable in reference to the State's interest in the health and safety of Connecticut's children and the broader public." *We the Patriots*, 76 F.4th at 155. In coming to this conclusion, the Second Circuit considered data similar to the data put forth by Plaintiffs. *Compare We the Patriots*, 76 F.4th at 154 (citing vaccination rates and rates of religious and medical exemptions from the 2019-2020 year), *with* Am. Compl. ¶ 35–45 (discussing vaccination data from the 2019–2020 school year).

Next, Plaintiffs point to the legacy exemption for students who already held religious exemptions before April 28, 2021. Am. Compl. ¶ 130, Memo. in Opp. at 16 ("Leaving an entire class of similarly situated children unvaccinated for religious reasons while denying it to others goes to the very heart of neutrality and general applicability."). Again, the Second Circuit in *We the Patriots* determined that this provision actually accommodated religious exercise and is rationally related to the legitimate interest of accommodating existing religious objectors without overly broadening the vaccine exemptions. *See We the People*, 76 F.4th at 148 ("Far from

13

expressing hostility, legislators accommodated religious objectors to an extent the legislators believed [it] would not seriously undermine the Act's goals. . . . Most significant is the legacy provision."); *id.* at 156 ("The Act's legacy provision is rationally related because it accommodates religious believers who are already in school without extending that accommodation to younger children."). Plaintiffs provide no viable argument for this Court to abandon precedent and find that the legacy provision makes Public Act 21-6 violative of the Constitution.

Additionally, Plaintiffs point to the alleged lack of enforcement of the vaccine mandate against private K–12 schools. *See* Am. Compl. ¶¶ 17–18 (alleging that "Connecticut Department of Education and the Connecticut Department of Public Health have disclaimed the legal authority to enforce the vaccination mandate against private K-12 schools."); *see also* Memo in Opp. at 21 ("No other state agency or official is authorized by Connecticut law to enforce Public Act No. 21-6's vaccination mandate against private K-12 schools, and it has essentially rendered them exempt from Connecticut's school vaccination mandate."). To the extent there is a gap in enforcement for private K–12 schools versus public, such a gap does not reflect hostility to religion, nor preference for secular activity. *Cf. Lukumi*, 508 U.S. at 543 ("In sum, the neutrality inquiry leads to one conclusion: The ordinances had as their object the suppression of religion. The pattern we have recited discloses animosity to Santeria adherents and their religious practices; the ordinances by their own terms target this religious exercise; the texts of the ordinances were gerrymandered with care to proscribe religious killings of animals but to exclude almost all secular killings . . . ."). The allegedly limited enforcement for private K–12 schools does not suggest that Public Act No. 21-6 "proceeds in a manner intolerant of religious beliefs or restricts practices because of their religious nature." *Fulton*, 593 U.S. at 533.

Plaintiffs also assert that unlicensed religious daycares are exploiting a loophole to avoid vaccination mandates. Am. Compl. ¶ 132 ("Defendant essentially permits groups of parents to operate unlicensed daycares and preschools – free from Connecticut's vaccination requirements – almost identical to the one Milford Christian Church is operating through the guise of limiting such groups of parents to providing religious education strictly to their members."); *see also id.* ¶ 19–21 (alleging that "Defendant does little to no vetting" of unlicensed religious daycares). While, under Connecticut law, childcare programs engaged solely in religious instruction are excluded from licensing requirements, this exclusion is limited to "religious educational activities," not full-time childcare and general early childhood education. *See* Conn. Gen. Stat. § 19a-77(b)(8) ("For licensing requirement purposes, child care services shall not include such services which are: . . . Religious educational activities administered by a religious institution exclusively for children whose parents or legal guardians are members of such religious institution."). Plaintiffs' bald accusation that "Defendant essentially permits groups of parents to operate unlicensed daycares and preschools," Am. Compl. ¶ 132, is merely conclusory and thus insufficient to support their claims. *See Iqbal*, 556 U.S. at 681 ("These bare assertions . . . are conclusory and not entitled to be assumed true.").

Finally, Plaintiffs assert that the temporary, 90-day grace periods for foster and homeless children are a "loophole" that the Connecticut General Assembly did not address, suggesting "targeting and hostility to religious beliefs." Am. Compl. ¶¶ 22–23, 120, 122. This exception, however, does not reflect that Connecticut is "prohibit[ing] religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Fulton*, 593 U.S. at 535. Indeed this short-term, temporary exemption does not "*equally* undermine[]" Connecticut's "interest in the health of its schoolchildren," as a permanent religious exemption

would. *We the Patriots*, 76 F.4th at 154 (emphasis in original). Thus, this temporary grace period is analogous to the law's medical exemptions and is "not comparable to [the religious exemptions] in reference to the State's interest in the health and safety of Connecticut's children and the broader public." *Id.* at 155.

Consistent with this Court's previous Order dismissing the Complaint, Conn. Gen. Stat. § 19a-79 therefore is neutral and generally applicable. Because Conn. Gen. Stat. § 19a-79 is neutral and generally applicable, the statute is subject to rational basis review. *See We the Patriots*, 76 F.4th at 156 ("Because the Act and its legislative history contain no trace of hostility toward religion but rather reflect significant accommodations on the part of the legislature, because the Act does not provide for a system of individualized exemptions, and because it is not substantially underinclusive, it is neutral and generally applicable. The district court did not err, therefore, when it concluded the Act is subject rational basis review.").

Plaintiffs acknowledge that "Defendant Bye prevails if rational basis review applies" as the Second Circuit has "already determined that Public Act No. 21-6 survives rational basis review." Memo. in Opp. at 8. Indeed, in *We the Patriots*, the Second Circuit concluded that "protecting public health is a compelling government interest," and that the "Act's repeal of the religious exemption is rationally related to that interest because it seeks to maximize the number of students in Connecticut who are vaccinated against vaccine-preventable diseases." *We the Patriots*, 76 F.4th at 156. And that the Public Act No. 21-6's requirement that "children be vaccinated to attend school—as opposed to participate in community sports leagues, religious gatherings, and social gatherings of all types, is rational because only at school is attendance mandated by law." *Id.* (citations and internal quotation marks omitted). The law thus "satisfies rational basis review." *Id.*

16

Furthermore, this Court again declines to embrace Plaintiffs' argument that *Smith* should not be considered binding precedent, and that strict scrutiny should be applied. [1] *See Kimble*, 576 U.S. at 445 ("[A]n argument that [the Supreme Court] got something wrong—even a good argument to that effect—cannot by itself justify scrapping settled precedent. Or otherwise said, it is not alone sufficient that [the Supreme Court] would decide a case differently now than [it] did then."). As the Court stated in deciding the first motion to dismiss, "the role of this Court is not to selectively apply the law to suit a party's objectives, but to apply binding precedent to the circumstances presented in any given case." Order at 17, ECF No. 34.

Accordingly, Count One, the Free Exercise Clause claim will be dismissed.[2]

---

[1] Plaintiffs note that they repeat their arguments regarding *Smith* primarily to "preserve them for review by the United States Supreme Court" and recognize that "the Court, relying on Second Circuit decisions, has already rejected their hybrid-rights argument and their argument that Smith is inconsistent with the First Amendment's text, history, and tradition." Memo. in Opp. at 22.

[2] The Supreme Court's recent decision in *Mahmoud v. Taylor*, 606 U.S. __ (2025), does not affect this conclusion, contrary to Plaintiffs' assertions that "*Mahmoud* makes clear that such a choice [of vaccination or religious beliefs] is a substantial burden on Plaintiff's First Amendment right to raise their children in their faith." Notice at 4. In *Mahmoud* , the Supreme Court "recognized limits on the government's ability to interfere with a student's religious upbringing in a public school setting," *Mahmoud*, 606 U.S at *14, and therefore held that: "A government burdens the religious exercise of parents when it requires them to submit their children to instruction that poses 'a very real threat of undermining' the religious beliefs and practices that the parents wish to instill. And a government cannot condition the benefit of free public education on parents' acceptance of such instruction." *Mahmoud*, 606 U.S. at *5 (quoting *Wisconsin v. Yoder*, 406 U.S. 205, 218 (1972)); *see id.* at *15 ("The compulsory-education law 'carrie[d] with it precisely the kind of objective danger to the free exercise of religion that the First Amendment was designed to prevent' because it placed Amish children into 'an environment hostile to Amish beliefs,' where they would face 'pressure to conform' to contrary viewpoints and lifestyles.") (quoting *Yoder*, 406 U.S. at 218). Here, Plaintiffs are not receiving a "free public education," and their claims are related to a vaccine mandate, not educational "instruction."

Plaintiffs urge the Court not to "limit *Mahmoud* to the context of an educational curriculum," Notice at 3, because the *Mahmoud* Court stated that *Wisconsin v. Yoder* can be "relied on [] as a statement of general principles," *Mahmoud* at 606 U.S. at *19. But, as explained, the "general principles" derived from *Yoder* by the *Mahmoud* Court explicitly refer to "instruction," and are not relevant here. As the Supreme Court itself explained in *Mahmoud*, heightened scrutiny for a neutral and generally applicable law is appropriate only "when a law imposes a burden of the same character as that in *Yoder*." *Id.* at *22. Here, it does not. As a result, Plaintiffs seek to extend *Mahmoud and Yoder,* not only from the realm of public education to private education, but also from educational "instruction" to public health. This Court declines to accept Plaintiffs' invitation to do so. *See Ramos v. Louisiana*, 590 U.S. 83, 102 (2020) ("It is usually a judicial decision's reasoning—its *ratio decidendi*—that allows it to have life and effect in the disposition of future cases. As this Court has repeatedly explained in the context of summary affirmances, 'unexplicated' decisions may 'settl[e] the issues for the parties, [but they are] not to be read as a renunciation by this Court of doctrines previously announced in our opinions.'"); *see also* Kinstler *v. First Reliance Standard Life Ins.*

**B. The Establishment Clause Claim**

The First Amendment of the Constitution provides that "Congress shall make no law respecting an establishment of religion." U.S. Const. amend. I. The Establishment Clause is applicable to the states through the Fourteenth Amendment. *Everson v. Bd. of Ed. of Ewing Twp.*, 330 U.S. 1, 15 (1947) (noting the "application of the First Amendment to the states by the Fourteenth."). It ensures the government does not "coerce anyone to support or participate in religion or its exercise, or otherwise act in a way which establishes a state religion." *Muhammad v. City of New York Dep't of Corrs.*, 904 F. Supp. 161, 197 (S.D.N.Y. 1995).

"The First Amendment mandates governmental neutrality between religion and religion. . . . The state may not adopt programs or practices . . . which 'aid or oppose' any religion." *Epperson v. Arkansas*, 393 U.S. 97, 104, 106 (1968) (citing *Abington Sch. Dist. v. Schempp*, 374 U.S. 203, 225 (1963)). "[T]he government must be neutral when it comes to competition between sects." *Zorach v. Clauson*, 343 U.S. 306, 314 (1952).

"[T]his Court has adhered to the principle, clearly manifested in the history and logic of the Establishment Clause, that no State can 'pass laws which aid one religion' or that 'prefer one religion over another.'" *Larson v. Valente*, 456 U.S. 228, 246 (1982) (quoting *Everson*, 330 U.S. at 15). "When we are presented with a state law granting a denominational preference, our precedents demand that we treat the law as suspect and that we apply strict scrutiny in adjudging its constitutionality." *Larson*, 456 U.S. at 246.

---

*Co.*, 181 F.3d 243, 250 (2d Cir. 1999) (declining to adopt an interpretation of a Supreme Court holding that "would fail to accord [] meaning to the apparently deliberate use" of specific wording because "language the Supreme Court uses when it explicitly announces its holding must be assumed to have been crafted with care"); *United States v. Wong*, 40 F.3d 1347, 1373 (2d Cir. 1994) ("That is, until the Supreme Court rules otherwise, the district court would be obliged to follow [] precedent . . . .").

When assessing whether the Establishment Clause has been violated, courts begin with the "premise that the Establishment Clause is offended whenever a 'reasonable observer' could conclude that the government has 'endorse[d]' religion." *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 533 (2022) (internal citations omitted). In conducting this analysis, courts look to "'historical practices and understandings.'" *Town of Greece v. Galloway*, 572 U.S. 565, 576 (2014); *see also Am. Legion v. Am. Humanist Ass'n*, 588 U.S. 29, 60 (2019) (plurality opinion). The central question is whether, "consistent with a historically sensitive understanding of the Establishment Clause, [the government has] 'ma[d]e a religious observance compulsory.'" *Kennedy*, 597 U.S. at 537 (quoting *Zorach*, 343 U.S. at 314); *see also id.* ("Government 'may not coerce anyone to attend church . . . nor may it force citizens to engage in 'a formal religious exercise,'… coercion along these lines was among the foremost hallmarks of religious establishments the framers sought to prohibit when they adopted the First Amendment." (quoting *Lee v. Weisman*, 505 U.S. 577, 589 (1992))).

Plaintiffs allege that Conn. Gen. Stat. § 10-204a and Conn. Gen. Stat. § 19a-79 violate the Establishment Clause by giving preferential treatment to certain religious conduct over other, identical religious conduct. Am. Compl. ¶¶ 141–42. Specifically, they argue that individuals who asserted religious exemptions before April 28, 2021, receive preferential treatment compared to those who attempted to assert similar religious objections after that date. *Id.*

Ms. Bye argues that the legacy provision does not apply to preschools and daycares, and that therefore Plaintiffs lack standing to challenge it. Mot. to Dismiss at 8. Bye asserts that even if Plaintiffs had standing, the legacy provision constitutes permissible religious accommodation under Supreme Court precedent and thus, Count Two should be dismissed. Reply at 3.

In response, Plaintiffs clarify that they do not challenge the constitutionality of the legacy exemption *per se*. Memo in Opp. at 25–26. Rather, they argue that Public Act No. 21-6 fails to accommodate their religious beliefs while accommodating others' beliefs in near-identical educational settings. *Id*.

Ms. Bye contends that this argument lacks merit because preschools and daycares are not subject to disparate treatment. Reply at 6. She maintains that the analysis of the legacy provision is irrelevant to plaintiff's claims because "[t]he Plaintiffs agree that no legacy provision applied to children enrolled in preschool or daycare at the time that Public Act No. 21-6 was enacted." Memo in Opp. at 15 (quoted in Reply at 3-4).

The Court agrees, but for a different reason.

Ms. Bye mischaracterizes Plaintiffs' claim as "challeng[ing]" the legacy provision. Plaintiffs, however, are directly challenging their own lack of an exemption to the vaccine requirement; the legacy provision is only used as a comparator to argue that Connecticut is violating the Establishment Clause's requirement of "neutrality among religious adherents." Memo in Opp. at 27. Plaintiffs' claim is that while they are being denied a religious accommodation for the vaccination requirement, other students (albeit older) have been granted a permanent exemption based on their religious beliefs. Plaintiffs have standing for this claim, and analogous claims have been brought in the Second Circuit before. *See, e.g.*, *New Yorker for Religious Liberty, Inc. v. City of New York*, 125 F.4th 319, 330–32 (2d Cir. 2024) (addressing Plaintiffs' claim that "Citywide Panel system [that allegedly granted vaccine exemptions to some religious adherents and not others] violates the Establishment Clause . . . by privileging some religious beliefs over others").

While standing is not an issue, Plaintiffs have still failed to adequately plead an Establishment Clause claim, as they have not provided factual allegations suggesting that the existence of the legacy exemption suggests that the government has preferred or "established" a religion. *See Town of Greece*, 572 U.S. at 581 (emphasizing the absence of "indication that the prayer opportunity has been exploited to proselytize or advance any one, or to disparage any other, faith or belief'' (quoting *Marsh v. Chambers*, 463 U.S. 783, 794 (1983)).

The legacy provision in Public Act No. 21-6 does not classify individuals based on religion, denomination, or belief, but instead distinguishes based on a cutoff date. The Establishment Clause does not prohibit the government from making purely secular distinctions that do not distinguish between one faith and another. Rather, the Establishment Clause requires neutrality among religious beliefs or denominations to ensure that the government does not establish or preference a particular faith. *See Walz v. Tax Comm'n of City of New York*, 397 U.S. 664, 669 (1970) ("[T]he basic purpose of these provisions . . . is to insure that no religion be sponsored or favored, none commanded, and none inhibited."); *see also id.* at 668 ("It is sufficient to note that for the men who wrote the Religion Clauses of the First Amendment the 'establishment' of a religion connotated sponsorship, financial support, and active involvement of the sovereign in religious activity.").

Moreover, Plaintiffs allege no specific facts suggesting that the legacy provision was created with the intention of—or even has any effect of—burdening or preferencing a particular faith. *Cf. Larson*, 456 U.S. at 247 n.23 (holding that law distinguishing between religious organization who received over fifty percent of their funding from members and those that did not "ma[de] explicit and deliberate distinctions between different religious organizations . . . [by] effectively distinguish[ing] between 'well-established churches' that have 'achieved strong but

21

not total financial support from their members,' on the one hand, and 'churches which are new and lacking in a constituency, or which, as a matter of policy, may favor public solicitation over general reliance on financial support from members,' on the other hand"); *see also id.* at 254 ("The fifty percent rule of § 309.515, effects the *selective* legislative imposition of burdens and advantages upon particular denominations. . . . For the history of [the] fifty per cent rule demonstrates that the provision was drafted with the explicit intention of including particular religious denominations and excluding others." (citations omitted)). Instead, Plaintiffs simply assert that the legacy provision's "preferential treatment is clear." Am. Compl. ¶ 143. Such conclusory allegations are insufficient to state a claim for relief. *See Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Accordingly, Count Two, the Establishment Clause claim, will be dismissed.[3]

## C. The Free Speech Claim

"At the heart of the First Amendment lies the principle that each person should decide for himself or herself the ideas and beliefs deserving of expression, consideration, and adherence." *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 213 (2013) (quoting *Turner Broadcasting System, Inc. v. FCC*, 512 U.S. 622, 641 (1994)). "Freedom of

---

[3] Although the plaintiffs in *We the Patriots* did not raise an Establishment Clause claim, the Second Circuit highlighted the "mutually beneficial 'play in the joints' between the Establishment Clause and Free Exercise Clause" when addressing plaintiffs' arguments about the legacy provision. *We the Patriots*, 76 F.4th at 150 (quoting *Waltz*, 397 U.S. at 669). In considering this "play in the joints," the Second Circuit noted that "[s]urely the granting of a religious accommodation to some in the past doesn't bind the government to provide that accommodation to all in the future, especially if experience teaches the accommodation brings with it genuine safety problems that can't be addressed at a reasonable price." *Id.* (quoting *Yellowbear v. Lampert*, 741 F.3d 48, 58 (10th Cir. 2014) (Gorsuch, J.)). This principle further supports the Court's conclusion in this case.

speech [thus] prohibits the government from telling people what they must say." *Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*, 547 U.S. 47, 61 (2006) (citing *West Virginia State Bd. of Ed. v. Barnette*, 319 U.S. 624, 642 (1943) and *Wooley v. Maynard*, 430 U.S. 705, 717 (1977)).

But "it has never been deemed an abridgment of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed." *Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*, 547 U.S. 47, 62 (2006) (quoting *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502 (1949). A law may be constitutional if the "law's effect on speech would be only incidental to its primary effect on conduct." *Expressions Hair Design v. Schneiderman*, 581 U.S. 37, 47 (2017); *see also 44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 512 (1996) ("[T]he First Amendment directs that government may not suppress speech as easily as it may suppress conduct[.]").

Plaintiffs allege that Connecticut's vaccination mandate and childcare licensing compels them to "convey an expressive message to parents and students within their ministry that violates their deeply held religious beliefs and convictions by telling them that they are not welcome in Milford Christian Church's daycare and preschool, Little Eagles, if they are not vaccinated."[4] Am. Compl. ¶ 146. They further allege that the vaccine and licensing requirements "substantially burden the Plaintiffs' right to free speech by conditioning their ability to engage in an expressive evangelistic ministry to children [on licensing requirements] that require[] a violation of their

---

[4] In their response to the motion to dismiss, Plaintiffs state that to the extent that the Court finds no change in factual allegations, they are not seeking to relitigate but preserving the issue for appellate review out of caution. Memo. in Opp. at 29. But, they also note that they "have added substantial facts that show more than an incidental burden on their right to free speech." *Id.*

religious beliefs or such stringent requirements as to prohibit them from reaching the very people that the ministry seeks to reach through both its speech and expressive conduct." *Id.* ¶ 149.

Ms. Bye argues that Plaintiffs "boldly distorts the facts." Memo. in Supp. at 13. Ms. Bye contends that "Defendant[] did not compel Plaintiff[s] to use any specific language in its messaging to the parents and students." *Id.* at 14. "To the extent that the statute places a burden on the Plaintiffs speech," Ms. Bye argues, "it is incidental and permissible." *Id.* Ms. Bye also points to the exception to the licensing requirement for "religious activities" which are distinct from "child care services" under Conn. Gen. Stat. § 19a-77(b). *Id.* Bye argues that the church retains the ability to minister through other means and nothing in the law prohibits their evangelistic activity. *Id.* She emphasizes that no additional facts have been alleged to justify reconsideration of the dismissal of the free speech claim. *Id.*

The Court agrees.

To the extent Plaintiffs have included additional allegations to support their previous free speech claim, these allegations are insufficient to revive their claim.

The Second Circuit's decision in *Clementine Company, LLC v. Adams* is instructive. 74 F.4th 77 (2d Cir. 2023). There, the Second Circuit determined that New York City's requirement that certain businesses require COVID-19 vaccinations for entry did not implicate the First Amendment rights of the Plaintiff, a theatre company, whose primary contention was that they had to turn people away who were unvaccinated. *See id.* at 84 ("Plaintiffs argue that Key to NYC constituted a content- and viewpoint-based restriction on their speech, violating their right to freedom of speech protected by the First Amendment. The City argues that, under *Arcara v. Cloud Books, Inc.*, 478 U.S. 697 (1986), Key to NYC did not even implicate Plaintiffs' First Amendment rights. In the alternative, the City contends that even if Key to NYC is viewed as

restricting Plaintiffs' speech, it was a content-neutral regulation that survives intermediate

scrutiny. We agree with the City on both points."). Instead, the vaccination law was a "public

health law" that "was directed at unlawful conduct having nothing to do with books or other

expressive activity." *Id.* at 85 (quoting *Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 707 (1986)).

So too here: Connecticut's vaccination requirement has nothing to do with expressive

activity. And, although as a place of worship Milford Community Church may regularly engage

in expressive activity, it cannot evade regulations entirely unrelated to such expression. *See id.*

("At bottom, the Supreme Court emphasized that 'neither the press nor booksellers may claim

special protection from governmental regulations of general applicability simply by virtue of

their First Amendment protected activities.' That is why businesses—even those engaged in

expressive activity—cannot invoke the First Amendment to claim immunity from, *e.g.*, fire or

health code violations." (quoting *Arcara*, 478 U.S. 697 at 707)).

And, even assuming *arguendo* that the vaccination mandate does incidentally burden

Plaintiffs' speech, the regulation would survive First Amendment analysis. "[I]ntermediate

scrutiny [is t]he appropriate standard by which to evaluate the constitutionality of a content-

neutral regulation that imposes only an incidental burden on speech." *Clementine Company,*

*LLC*, 74 F.4th at 87 (quoting *Vincenty v. Bloomberg*, 476 F.3d 74, 84 (2d Cir. 2007); *see also*

*Rumsfeld*, 547 U.S. at 67 ("We have held that 'an incidental burden on speech is no greater than

is essential, and therefore is permissible under *O'Brien,* so long as the neutral regulation

promotes a substantial government interest that would be achieved less effectively absent the

regulation.'" (quoting *United States v. Albertini*, 472 U.S. 675, 689 (1985)))).

As in *Clementine Company, LLC*, a regulation "'mandating vaccinations' . . . serves

purposes unrelated to the content of the regulated expression . . . [and] is clearly a content-

neutral restriction." 74 F.4th 77, 87; *see also id.* at 87–88 ("[T]here is no allegation or plausible

argument that [the COVID-19 vaccine requirement program,] Key to NYC's manifest purpose

was to regulate speech because of the message it conveys."). And the vaccine requirement is at

least a "substantial" government interest. *See We the Patriots*, 76 F.4th at 156 ("[P]rotecting

public health is a compelling government interest."). Finally, absent the vaccination requirement,

Connecticut would be far less able to control the spread of communicable diseases among

children and the public as a whole. *See, e.g.*, *Clementine Company, LLC*, 74 F.4th at 88 ("'It

suffices that the means chosen . . . add of the effectiveness' of the COVID vaccination program."

(quoting *Rumsfeld*, 547 U.S. at 67)).

Accordingly, Count Three, the free speech claim, will be dismissed.

### D.  The Remaining Claims

Plaintiffs re-allege Counts Four, Five, and Six, the freedom of association, the equal

protection, and the child-rearing claims respectively, in the Amended Complaint. Am. Compl. at

29-32. Ms. Bye moves to dismiss Counts Four, Five, and Six because each of these claims added

no new meaningful allegations, and are nearly identical to the original Complaint. Mot. to

Dismiss Memo. in Supp. at 15-17.

Plaintiffs, in turn, "acknowledge that they have not expanded the factual allegations for

their freedom of association, equal protection, and child-rearing claims" and that "[t]hey are not

seeking to relitigate the Court's prior decisions on those claims." Memo. in Opp. at 32. Instead,

"they are preserving them for further appellate review." *Id.* at 32

Given that Plaintiffs admit they have not added factual allegations to Counts Four, Five,

and Six of the Amended Complaint, these Counts will remain dismissed. *See, e.g.*, *Gulley v.

Lizon*, No. 3:19-cv-310 (SRU), 2019 WL 2233264, at *11 (D. Conn. May 23, 2019) ("[Plaintiff]

alleges no new facts in the Amended Complaint relating to [the] claim. Thus, the claim against defendant . . . remains dismissed."); *Junior v. Garrett*, No. 19-03788 (GRB)(LB), 2020 WL 7042811, at *14 (E.D.N.Y. Dec. 1, 2020) ("Despite an opportunity to do so, plaintiff has asserted no new facts in the amended complaint. Accordingly, plaintiff's deprivation of property claim fails to state a claim for relief and is dismissed . . . .").

Accordingly, Counts Four, Five, and Six will be dismissed.

### E.  Further Leave to Amend

Since the Court has reviewed the Complaint and Amended Complaint, and neither have stated a viable claim for relief, the Court sees no reason to provide another opportunity to amend. *See, e.g.*, *Bellikoff v. Eaton Vance Corp.*, 481 F. 3d 110, 118 (2d Cir. 2007) ("Leave to amend is especially inappropriate where, as here, plaintiffs' proposed amendments merely recycled versions of claims which had already fallen victim to a motion to dismiss."); *Nicholson v. Bank of New York*, 22-cv-3177 (PGG) (KHP), 2023 WL 5526715, at *9 (S.D.N.Y. Aug. 28, 2023) ("A court may properly deny leave to amend, however, in cases of . . . repeated failure to cure deficiencies . . . ." (citation and internal quotation marks omitted)); *Dash v. Mayers*, 19-cv-414 (GBD) (JLC), 2020 WL 1946303, at *9 (Apr. 23, 2020), *report and recommendation adopted*, 2020 WL 3056133 (S.D.N.Y. June 9, 2020) ("[B]ecause [Plaintiff] has now effectively had two opportunities to amend his complaint and any further attempt would be futile for the various reasons set forth in this Report, he should not be granted leave to further amend his pleadings." (citations omitted)).

Accordingly, further leave to amend will be denied.

### IV.   CONCLUSION

For the foregoing reasons, Ms. Bye's motion to dismiss is **GRANTED.**

27

Further leave to amend is **DENIED.**

The Clerk of Court is respectfully directed to close this case.

**SO ORDERED** at New Haven, Connecticut, this 8th of August, 2025.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE